486 So.2d 166 (1986)
John MAKAR, Plaintiff-Appellant,
v.
Tommy G. STEWART and Wamul Ferguson Stewart, Defendants-Appellees.
No. 84-1198.
Court of Appeal of Louisiana, Third Circuit.
March 25, 1986.
*168 John Makar, Natchitoches, pro se.
Gahagan & Gahagan, Marvin F. Gahagan, Natchitoches, for plaintiff-appellee.
Monty L. Doggett, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, FORET and KING, JJ.
*169 KING, Judge.
The issues presented on appeal are whether or not the trial court (1) was correct in the calculation and disbursement of partnership assets; (2) was correct in failing to award damages and attorney's fees to plaintiff; (3) was correct in failing to award interest from date of judicial demand; and (4) was correct in its assessment of court costs.
This matter involves the consolidated cases of John Makar v. Tommy G. Stewart and Wamul Ferguson Stewart, a suit for dissolution of a partnership between John Makar and Tommy G. Stewart, and the case of Wamul Ferguson Stewart v. Tommy Gene Stewart, a suit for the partition of the community of acquets and gains formerly existing between them. These suits were consolidated in the trial court and remain consolidated on appeal. Since the law and relevant facts are common to both, our opinion here is equally applicable. However, we render a separate judgment in the consolidated case of Wamul Ferguson Stewart v. Tommy Gene Stewart, 486 So.2d 179 (La.App. 3rd Cir.1986).
After trial on the merits the trial court rendered judgment in these two consolidated cases and a written judgment was signed. Plaintiff applied for a new trial in these consolidated cases and the trial court granted a partial new trial for the taxing of court costs in these suits and amended its original judgment taxing costs. An amended judgment was then signed. The judgment was again subsequently amended to correct errors in property descriptions contained in the original judgment. Makar timely appeals the judgment in these consolidated suits, but neither Tommy G. Stewart nor his wife, Wamul Ferguson Stewart, appeal or answer the appeal.
We affirm in part, reverse in part, amend in part, and render judgment.

FACTS
On August 9, 1977, John Makar (hereinafter Makar) and Tommy G. Stewart (hereinafter Stewart) entered into a written partnership agreement prepared by Makar, which provided that:
"1. Makar will purchase for himself and Stewart certain property in the City and Parish of Natchitoches for a total price of $28,000 plus assumption of taxes and paving liens with property to be placed in name of Stewart for convenience.
2. Makar will continue to collect rents, keep accounts, pay for essential repairs, taxes, insurance, etc. out of the rentals forwhich [sic] he isto [sic] receive same amount he now receives for such services, namely 8% in amounts collected or expended. Books shall always be open for inspection by Stewart.
3. Stewart agrees to do painting, repairing and upgrading of property at no cost for labor; materials to be paid for out of rentals.
4. The parties hereto shall jointly decide when and what property to sell; the sales price to be applied to the payment of the $28,000 advanced by Makar plus 8% per annum interest from this date. If the parties decide to keep the property or any portion thereof, a portion of the rentals will be usedto [sic] repay Makar.
5. When Makar has received all of his money back, whatever property remains will be owned jointly or 50% each. If the parties decide to divide the properties, Makar shall have first choice of a house, Stewart Second, Makar Third, etc. until properties are equally divided. If an extra property remains, this property will be sold or purchased by the other partner at its fair market value.
6. If at any time, Makar wishes to have property placed in his name or persons of his choice, Stewart will sign such deed subject to the rights herein set forth.
7. Makar agrees to deposit all rents received ina [sic] special trust account from which all disbursements will be made.

*170 8. After the payment of all expenses, repairs, taxes, insurance and payments on original $28,000, such portion of the balance which remains will be divided equally between Makar & Stewart provided sufficient reserve is maintained for on-going repairs.
9. This agreement subject to change by mutual agreement."
Two of the properties that were acquired under this agreement (the Vallien and Metoyer properties) were later sold and the proceeds of those sales, $9,000.00 and $7,000.00 respectively, were applied to the original $28,000.00 indebtedness to Makar. In the Metoyer sale, $1,000.00 of the proceeds was placed in a certificate of deposit in the names of Stewart and his wife with the Progressive Savings and Loan Association. Makar credited the partnership account with payment to him of the full $7,000.00 of the proceeds from the Metoyer sale and Stewart and his wife both endorsed this certificate of deposit in blank and gave this certificate of deposit to Makar.
Another piece of property (the Rikard property) was purchased in the name of Stewart on April 14, 1978, although it was not a part of the original partnership agreement. All of the money paid for this piece of property was advanced by Makar. A down payment of $5,565.31 was made and Makar paid off the existing mortgage of $9,151.89. According to the terms of another written agreement between Stewart and Makar, Stewart was to pay back to Makar one-half of the amount Makar advanced for the purchase of the Rikard property plus nine and one-half percent interest thereon, until paid. No money was ever paid to Makar by Stewart or by the partnership on this loan for purchase of the Rikard property.
An additional parcel of partnership property was sold on August 5, 1981 to Mr. and Mrs. Burns for $13,500.00. The sales agreement called for a $1,500.00 down payment and twelve (12) monthly installment payments of $175.00, with one final payment of $11,400.00 in principal and $125.00 in interest. The total amount received by the partnership for this property, after payment of the sales commission, was $13,440.00. During the period of time when these installment payments were being made to the partnership, Stewart and his wife began having marital difficulties and Makar thought it best to leave the $13,400.00 in the partnership's account instead of crediting it toward the balance of the original debt owed to him by the partnership.
In March, 1982, the Stewarts, in the midst of their marital difficulties, both filed a sworn affidavit with the Progressive Savings and Loan Association stating that the $1,000.00 certificate of deposit in the name of Stewart and his wife was lost or stolen and that the certificate had not been endorsed or negotiated to any other person and withdrew the proceeds of the certificate and divided it between themselves. The money received for this certificate of deposit, after deduction of a penalty for cashing it prematurely, remains with Stewart and his wife. After their divorce, the Stewarts, on June 14, 1982, without consulting Makar and contrary to the partnership agreement, sold two other parcels of partnership property for $45,000.00 without the consent of Makar and divided the proceeds equally between themselves. These funds ultimately also went to the Stewarts and remain with them. At the time these sales occurred Mrs. Stewart had already filed a suit for partition of the community property acquired during her marriage with Stewart, claiming a full one-half ownership interest in all of the partnership property in which the record title then stood in Stewart's name. At the time of the partition sale in the consolidated community property suit, Makar, in an effort to protect his interest, was forced to purchase in his individual capacity for $40,000.00 the partnership property standing in Stewart's name. Makar never paid the purchase price for this property to the Sheriff after the partition sale because of the pendency of this suit. The judgment rendered in this suit recognized Makar as the sole owner of *171 this property for partial credit on the sums owed him as a result of the dissolution of the partnership. Neither Stewart nor his wife have appealed or answered this appeal so this part of the judgment in the consolidated suit is now final as to them.
Makar unsuccessfully attempted to have Stewart and his wife account to the partnership for the $45,000.00, that they unlawfully acquired in their sale of the two pieces of partnership property, and to account to him for the proceeds of the certificate of deposit. He then filed suit against Stewart and his wife to recover his share of the $45,000.00 and other sums he claimed were owed to him by the partnership, and to have his interest recognized in the partnership properties as provided for in the partnership agreement. Makar further sued for recovery of the funds represented by the converted certificate of deposit, for damages, for loss of interest, for attorney's fees, and for a declaration of his rights under the partnership agreement between Stewart and himself.
Makar's suit for dissolution of the partnership was consolidated for trial with the community property partition suit between Stewart and his wife since the partnership properties were also involved in the community property partition suit. It was stipulated between all parties at the trial of these consolidated suits on June 7, 1983 that (1) a full accounting should be ordered of all partnership funds obtained and expended, and (2) the purchase of the Rikard property would be treated as part of the original partnership agreement.
On October 19, 1983, the trial court rendered judgment finding that (1) Mrs. Stewart was not a party to the original partnership agreement and therefore was not bound by its terms; (2) neither Stewart nor Makar was in a position to demand damages from the other in connection with the dissolution of the partnership; (3) as far as the issue of the amount of money received from the partnership by the partners, the Court found Stewart received $12,000.00 and Makar received $11,000.00; (4) under the language of the partnership agreement, Makar was entitled to eight percent of the funds collected by the partnership together with eight percent of the funds expended by the partnership for repairs, upkeep, taxes and insurance; (5) Makar was entitled to be repaid all money that he loaned to the partnership along with the agreed upon amounts of interest; (6) Makar was entitled to recover from Stewart and his wife $1,414.14 for their conversion of his certificate of deposit; and (7) the balance of the partnership funds left on hand should be divided with one-half going to Makar, one-fourth to Stewart, and one-fourth to Mrs. Stewart.
Judgment was signed by the trial court on May 18, 1984, with amended judgments being signed September 28, 1984 and on October 8, 1984. These judgments provided that the $98,440.00 in partnership assets was to be dispersed as follows: (1) Makar was to receive $65,737.95; (2) Mrs. Stewart was to receive $16,351.03; and (3) Stewart was to receive $16,351.02. The judgment also awarded Makar $1,414.14 against the Stewarts jointly, severally and in solido and recognized Makar as sole owner of the partnership properties sold to him in the community property partition sale and placed him in possession and full ownership of those properties. The judgment also ordered that the costs of the proceedings in the partnership dissolution suit to be taxed one-half against Makar, one-fourth against Stewart and one-fourth against Mrs. Stewart. The judgment also ordered that the costs of the partition suit between the Stewarts be divided equally between Mr. and Mrs. Stewart.
Makar now appeals from that judgment alleging that (1) portions of the written judgment which was signed were mathematically incorrect; (2) the trial court's opinion in its Reasons for Judgment contained an incorrect computation of interest and distribution of partnership assets; (3) the trial court erred in holding that Makar received the sum of $2,000.00 from the partnership in light of a lack of supporting evidence; (4) the trial court erred in dividing the court costs in the partnership dissolution *172 suit between Makar and Mr. and Mrs. Stewart in light of the Stewarts' tortious and illegal conduct; (5) the trial court erred by failing to allow damages and attorney's fees for the Stewarts' behavior; (6) the trial court erroneously credited Makar with receipt of payment on the Burns sale from the date of the sale when the sale was a credit sale and the funds from the sale remained on deposit in the partnership account; and (7) the trial court erred in failing to allow Makar interest on sums owed to him from date of judicial demand. Neither Stewart nor his wife have appealed or answered plaintiff's appeal.
Review of the evidence contained in the record reveals there was manifest error on the part of the trial court in its calculation and disbursement of the assets of the partnership requiring a partial reversal of this judgment. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The amounts awarded in the trial court's written judgment do not conform to the trial court's actual interpretation of the partnership agreement, as set forth in its Reasons For Judgment, nor to the facts presented by the evidence in these consolidated cases.
LSA-C.C. Art. 2811 provides that:
"A partner who acts in good faith for the partnership may be a creditor of the partnership for sums he disburses, obligations he incurs, and losses he sustains thereby."
LSA-C.C.Art. 2832 provides that:
"The creditors of the partnership must be paid in preference to the creditors of the partners."
LSA-C.C.Art. 2833 provides that:
"The creditors of a partnership shall be paid in the following order of priority: secured creditors in accordance with their security rights; unsecured creditors who are not partners; unsecured creditors who are partners.
If any assets remain after the payment of all secured and unsecured creditors, the capital contributions shall be restored to the partners. Finally, any surplus shall be divided among the partners proportionally based on their respective interests in the partnership."
Corpus Juris Secondum states that in the dissolution of a partnership:
"The final judgment or decree [dissolving the partnership] may, and often does, include an adjudication that a balance is due from one or more of the partners to another partner or other partners; and, where it has been determined that one partner should pay to the other a definite amount in settlement of his obligations and the rights of the other partner, a personal money judgment may be rendered accordingly. However, the claims of partners for reimbursement of contributions to capital, or disbursements on behalf of the firm, or repayment of debts of the partnership to them are primarily against the partnership assets, and a personal judgment against individual partners should not be rendered unless the partnership assets are insufficient to make repayment." (Footnotes omitted.) 68 C.J.S. Partnership § 445(e), page 999.

PAYMENTS TO PARTNERS FROM PARTNERSHIP
Makar first contends that the trial court erred in finding that he had received $11,000.00 from the partnership. Makar testified at trial that he only received $9,000.00 in cash from the partnership. The trial court apparently relied upon a blurred copy of a check from the partnership account in the amount of $2,000.00, which was attached to the Stewarts' brief to the trial court and to the Stewarts' appellate brief, which was never offered into evidence. Since the check was never offered into evidence, it is improper for either the trial court or the appellate court to consider such evidence. The unrebutted evidence presented at trial reflects the fact that Makar received only $9,000.00 in cash from the partnership. Having found that Makar received only $9,000.00 in cash and Stewart received cash in the amount of $12,000.00 from the partnership, we find that Makar is entitled to recover an additional $3,000.00 from the partnership. *173 Thus there is a deficit of $3,000.00 owed by the partnership to Makar which must be satisfied from the partnership's assets before any remaining assets can be distributed between Makar and Stewart. We accordingly find that the partnership owes Makar $3,000.00 to make up the deficit between the payments made to Stewart and the payments made to Makar during the existence of the partnership. LSA-C. C.Arts. 2832 and 2833.

ADMINISTRATION FEES OWED TO MAKAR
At trial, the amount that Makar was to receive under the written partnership agreement (Paragraph 2) for his administration of the partnership's financial affairs was contested by the parties. In its Reasons for Judgment, the trial court found that under the language of the agreement, "... 8% in amounts collected or expended.", entitled Makar to eight percent of the funds collected by the partnership and also to eight percent of the funds expended by the partnership for repairs, upkeep and other maintenance expenses, taxes, and insurance. The court found the Stewarts' contention that Makar was to receive only eight percent of the funds collected or only eight percent of the funds expended, whichever was greater, to be untenable. The Stewarts did not appeal this decision or answer the appeal contesting this decision so it is now final as to them. However, for our review of the record it becomes obvious to us that the amount awarded Makar for administration fees in the written judgment itself was not calculated as eight percent of all funds collected and expended, but rather calculated only on eight percent of the funds collected. Despite the trial court's interpretation of the provision of the written partnership agreement regarding administration fees, counsel for Stewart submitted to the trial court a brief and a model judgment (not a part of the record but reiterated in the Stewarts' appellate brief) which calculated the eight percent administration fee on only the funds collected, in accordance with the Stewarts' original contention that the fee was to be calculated on the greater of either the funds collected or funds expended. The trial court, despite its interpretation of the written partnership agreement in its Reasons For Judgment, apparently used these erroneous calculations in the judgment which was signed. The administration fees owed to Makar by the partnership should have been calculated on eight percent of the funds collected and the funds expended. The evidence shows that during the duration of the partnership, $38,607.77 was collected and $23,237.59 was expended for total collections and expenditures of $61,845.36. Therefore, the administration fee owed to Makar is eight percent of $61,845.36, which amounts to $4,947.63. We accordingly find that the partnership owes Makar $4,947.63 for administration expenses. LSA-C.C.Arts. 2832 and 2833.

SALE PROCEEDS OF PARTNERSHIP PROPERTIES CREDITED TO ORIGINAL DEBT OWED TO MAKAR AND INTEREST ACCRUING THEREON
The trial court in its Reasons for Judgment also found that under the partnership agreement (Paragraphs 4, 5 and 8) Makar had loaned $28,000.00 to the partnership and "the partnership therefore must pay him back the amount he loaned together with the agreed upon amount of interest." Under the agreement Makar was to receive eight percent interest on the balance of his loan until it was repaid. We find no error in the trial court's interpretation of this provision in the agreement. However, again, the trial court, in calculating the actual amount owed to Makar on the original loan, relied on what we consider to be an erroneous calculation by the Stewarts' counsel in their brief and model judgment submitted to the trial court.

VALLIEN AND METOYER PROPERTIES
There was no dispute between the parties as to the amount received by the partnership for the sale of the Vallien and Metoyer properties, $9,000.00 and $7,000.00 *174 respectively, nor was there any dispute that those amounts were credited to the original debt of $28,000.00 owed to Makar, thus reducing the balance owed to Makar after these sales to $12,000.00. Additionally, there was no dispute over the amount of interest due on the amounts credited for these sales at the time of the sales. Makar and Stewart agree that the amount of interest owed at the time of the Vallien sale was $122.74 and that the amount of interest owed at the time of the Metoyer sale was $1,903.70. However, in Stewart's counsel's brief and model judgment submitted to the trial court, the interest accumulated on the partnership's debt is treated as an asset of the partnership and is equally divided between Makar and the Stewarts. This is contrary to the clear language of the agreement and also contrary to the trial court's Reasons for Judgment, which clearly states that all of this interest was owed to Makar by the partnership. Therefore, the Stewarts are not entitled to any of the interest, totaling $2,026.44, accruing on the original loan by Makar to the partnership.

BURNS PROPERTY
The partnership sold Mr. and Mrs. Burns a third piece of partnership property. The partnership ultimately received the net proceeds of $13,440.00 from this sale. Makar testified that he never credited this amount toward the balance of the partnership debt owed to him, for money which he had advanced to the partnership to purchase this property, and which balance then stood at the principal amount of $12,000.00, but rather left this money in the partnership account because of the marital difficulties of the Stewarts and his uncertainty as to their claims against the money. This money still remains with the partnership.
The trial court included the sale price of $13,440.00 for the Burns property in the assets of the partnership that were available for distribution. Stewart's brief and model judgment submitted to the trial court treated this money as an available asset for distribution, yet at the same time, it also treated the money as already having been credited toward satisfaction of the original debt owed to Makar. This is obvious error because if this money had been credited toward the original debt it necessarily would not have been available for inclusion as an asset of the partnership to be distributed between the partners.
It was appropriate for the trial court to include this $13,440.00 from the Burns' sale in the assets of the partnership. However, an outstanding balance of $12,000.00 still remains on the partnership debt to Makar, and Makar is entitled to recover the balance plus the eight percent interest due thereon from the partnership. Interest calculated on this $12,000.00 balance at the time of trial amounted to $3,380.00, which is owed to Makar.
For this reason, Makar is also entitled to recover the $12,000.00 balance owed on his loan to the partnership plus the accured interest due thereon of $3,380.00. Therefore, Makar is entitled to receive $15,380.00 from the partnership in satisfaction of the original loan and accrued interest he made to the partnership for purchase of the partnership property. LSA-C.C.Arts. 2832 and 2833.

RIKARD PROPERTY
The parties stipulated at trial that the loan of money made by Makar for the purchase of the Rikard property, though the subject of a separate written agreement between Makar and Stewart, would be treated as a part of the original partnership agreement. The trial court in its Reasons for Judgment stated that Makar was entitled to recover all money he loaned to the partnership together with the agreed upon amount of interest. This also includes the money loaned for the purchase of the Rikard property. However, the amount awarded in the written judgment does not accurately reflect the actual amount owed to Makar regarding the Rikard purchase.
The parties agreed that the amount loaned by Makar for purchase of the Rikard property was $14,717.20 (down payment *175 of $5,565.31 and payment of mortgage of $9,151.89 totals $14,717.20) and that the accrued interest on that amount through the date of trial was $6,969.82 (9½ interest on $14,717.20 according to the parties' separate written agreement). Stewart, in his brief and model judgment submitted to the trial court, treated the interest accruing on this loan as a partnership asset and argues Makar should be awarded only one-half of the interest which accrued on this loan, or $3,484.84. This again is clearly contrary to the language of the partnership agreement as interpreted by the trial court. Makar is entitled to receive from the partnership the entire amount that he loaned for the purchase of the Rikard property plus all of the interest which accrued thereon, or a total of $21,687.07 ($14,717.20 purchase price and $6,969.82 interest totaling $21,687.07). LSA-C.C. Arts. 2832 and 2833.

REIMBURSEMENT FOR ALUMINUM
The trial court's Reasons for Judgment and the judgment itself make no specific mention of Makar's right to reimbursement for $80.00 which he paid for aluminum that was used for improvements on some of the partnership's property. However, the evidence presented at trial reveals that there was an agreement between Stewart and Makar to the effect that Makar would be reimbursed for this material. In the Stewarts' brief, the $80.00 is treated as a debt owed to Makar by the partnership. We find that Makar is entitled to reimbursement from the partnership of the sum of $80.00 for these materials for the partnership. LSA-C.C. Arts. 2832 and 2833.

YARDWORK EXPENSES
The trial court did not make any specific mention of Makar's claim that the partnership owed him $150.00 for labor for mowing lawns of partnership properties incurred by him as a result of Stewart's neglect of his responsibilities under the partnership agreement. However, the evidence presented at trial provides sufficient basis to justify an award for reimbursement of these expenses to Makar. It should be noted that in the brief and model judgment submitted by Stewart's counsel to the trial court, that this $150.00 for yardwork expenses was admittedly included in the itemization of money owed to Makar by the partnership. Therefore, we find that Makar is entitled to reimbursement from the partnership for these expenses he incurred for the partnership. LSA-C.C. Arts. 2832 and 2833.

ASSETS OF THE PARTNERSHIP
The trial court found that the partnership had $98,440.00 in assets. We agree. We also note that neither the appellant nor appellees contest this finding of fact by the trial court. These assets consisted of the $45,000,00 which the Stewarts received from the unauthorized sale of two of the partnership properties, $40,000.00 for the value of the partnership property claimed as community property by the Stewarts, and sold to Makar for this amount in the community property partition sale, and the $13,440.00 cash proceeds from the Burns sale which remained in the partnership account.

DISTRIBUTION OF ASSETS
From this $98,440.00 in total assets of the partnership the amounts owed to Makar by the partnership must be first deducted before the remaining partnership assets can be divided. LSA-C.C. Arts. 2832 and 2833. The amounts owed to Makar by the partnership include $3,000.00 to equalize the cash disbursements between Stewart and Makar; $4,947.63 in administration fees; $2,026.44 in accrued interest at the time of the credit on Makar's loan resulting from the Metoyer and Vallien sales; $15,380.00 representing the principal balance and accrued interest still owed to Makar on his original loan to the partnership; $21,687.07 representing the principal balance and accrued interest on the loan owed to Makar for the purchase of the Rikard property; $80.00 as reimbursement for the amount Makar spent for aluminum; *176 and $150.00 as reimbursement for the amount Makar spent for yardwork. The partnership owes Makar a total of $47,271.14 which must be paid to Makar before any remaining assets of the partnership are partitioned between Makar and the Stewarts.
After deducting from the partnership assets the amount owed to Makar there remains $51,168.86 of the partnership assets to be divided among Makar and the Stewarts. Of this amount, Makar is to receive one-half or $25,584.42 with Stewart and Mrs. Stewart each entitled to receive one-fourth or $12,792.22 each. All totaled, Makar is entitled to receive $72,855.56 from the dissolution of the partnership ($47,271.14 as a creditor and $25,584.42 as a partner totals $72,855.56) and Stewart and Mrs. Stewart to each receive $12,792.22.

CERTIFICATE OF DEPOSIT
The trial court found that the Stewarts owed Makar $1,414.14 on the certificate of deposit which rightfully belonged to Makar and which was improperly converted by the Stewarts. This $1,414.14 represented the amount of the certificate of deposit together with interest that would have accrued through the date of maturity. The Stewarts did not appeal or answer the appeal so this judgment is final as to them. After careful review of the record, we find no error in the trial court's determination that Tommy G. Stewart and Wamul Ferguson Stewart owe this sum in solido to Makar.

DAMAGES AND ATTORNEY'S FEES
The trial court was of the opinion that an award of damages and attorney's fees was inappropriate in this particular instance. Makar contends that the trial court was in error in light of the fact that, as he maintains, the Stewarts unlawfully converted partnership property in violation of the provisions of the partnership agreement.
LSA-C.C. Art. 2808 provides:
"Each partner owes the partnership all that he has agreed to contribute to it."
LSA-C.C. Art. 2809 provides:
"A partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity for himself or on behalf of a third person, that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits."
LSA-C.C. Art. 2811 provides:
"A partner who acts in good faith for the partnership may be a creditor of the partnership for sums he disburses, obligations he incurs, and losses he sustains thereby."
The trial court found that neither partner complied with the provisions of the partnership agreement governing their relationship as it was of the opinion that Makar had not given accountings to Stewart and that Stewart was in good faith in taking the actions that he did. For this reason the trial court awarded Makar no damages for dissolution of the partnership. However, a review of the record does not reveal a sufficient basis for the trial court's refusal to award damages to Makar.
The evidence in the record shows that Makar did in fact provide annual accountings to the Stewarts and that the books of the partnership were always available and open for inspection. It is also clearly apparent from the record that Stewart breached his fiduciary duties under the partnership agreement by selling partnership property without the knowledge or permission of Makar and pocketing the proceeds with his former wife. Stewart's conduct in this regard certainly constituted breach of the partnership agreement which would entitle Makar to recover damages from him. The Stewarts also illegally executed a sworn affidavit stating that the certificate of deposit in their name had been lost or stolen and had not been endorsed or negotiated, when in fact they had endorsed the certificate and had given it to Makar as part of the satisfaction of the partnership debt owed to Makar. The Stewarts then both split and pocketed the amount received when they cashed in the *177 certificate of deposit prematurely. They both knew that they had acted illegally in giving a false affidavit concerning the certificate of deposit and converting Makar's certificate of deposit for their own use.
The trial court was of the opinion that since Mrs. Stewart was not a party to the partnership agreement, she was not bound thereby. We disagree. Makar testified that he had explained the partnership agreement to Mrs. Stewart when he and Stewart entered into the agreement. Mrs. Stewart acknowledged this fact but says she never saw the written agreement. She also was aware of the payment made to Makar after the sale of the Metoyer property and of the giving of the certificate of deposit to him. Mrs. Stewart acknowledged that when she and her husband separated and she retained counsel that she had her counsel contact Makar and determine what he claimed. She stated she was aware of Makar's claim when she and her husband sold the partnership property for $45,000.00. Mrs. Stewart also testified that she had approached Makar and asked him to buy her undivided interest in the partnership properties which stood in her former husband's name. Stewart, as head and master of the community, entered into the partnership agreement with Makar during the existence of his community with Mrs. Stewart and it was an obligation of the community binding on Mrs. Stewart. It would be inconsistent and inequitable to say that Mrs. Stewart and the community were not bound by the obligations of the partnership agreement between Makar and Stewart but that she and the community were entitled to receive the benefits of that same partnership agreement. The evidence clearly shows that Mrs. Stewart's conduct was of such a nature that she should be held liable in solido with Stewart for any damages owed to Makar.
LSA-C.C. Art. 2324 provides that:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person for the damage caused by such act."
The evidence is clear that Mrs. Stewart knowingly and actively participated in the unlawful sale of what she knew to be partnership properties and in the unlawful conversion of the certificate of deposit. Mrs. Stewart had actual knowledge of Makar's claims of ownership interest in the partnership properties she and her former husband sold and Makar's ownership and possession of the certificate of deposit they unlawfully converted. The evidence is clear that Stewart knowingly and actively participated with his former wife in the illegal sale of the partnership property. Stewart had knowledge of Makar's interest in the partnership property, yet he did not disclose that information during the sales by him and his former wife, and permitted them to hold themselves out as each being the owner of an one-half interest in the partnership property. In the community property partition suit and subsequent partition sale, Stewart did nothing to challenge the claim of Mrs. Stewart that she was the owner of one-half of the partnership property which was included as property of their community.
After consideration of the facts and circumstances involved in this case, we are of the opinion that Makar is entitled to receive $3,500.00 in damages from Mrs. Stewart for her tortious conduct and from Stewart for his tortious conduct and breach of his fiduciary duty in connection with the partnership property. We are also of the opinion that attorney's fees need not be awarded for breach of the partnership agreement, particularly since Makar has proved no loss of attorney's fees. In fact, we note that Makar has represented himself in proper person during these proceedings and has therefore incurred no attorney's fees. We therefore award damages in favor of Makar and against Stewart and Mrs. Stewart jointly, severally, and in solido, for their tortious acts and Stewart's breach of the partnership agreement, in the sum of $3,500.00, together with legal interest thereon from date of judicial demand, until paid. We also award damages in favor of Makar and against Stewart and *178 Mrs. Stewart jointly, severally, and in solido, for their conversion of Makar's certificate of deposit, in the sum of $1,500.00, together with legal interest thereon from date of judicial demand, until paid.

INTEREST FROM DATE OF JUDICIAL DEMAND
Makar avers that the trial court erred by failing to award legal interest on all sums awarded by the judgment from the date of judicial demand, until paid. We disagree with Makar in that his suit for dissolution of the partnership and claims for reimbursement for loans and accrued interest owed to him by the partnership resulted in a trial judgment which included accrued interest through the date of the trial and thereafter at the rate contracted by Makar and Stewart, until paid. Therefore we agree that interest at the rate contracted for is owed to Makar on these loan balances from date of trial, until paid, as ordered by the trial court. However, we find that Makar is entitled to legal interest on the other sums awarded as a result of the partnership dissolution from date of judicial demand, until paid. The portion of the judgment granting Makar judgment against the Stewarts for their tortious acts and their conversion of the certificate of deposit are personal judgments of an ex delicto nature. Therefore legal interest on these amounts will also be awarded from date of judicial demand, until paid. Cf. LSA-C.C.P. Art. 1921 and LSA-R.S. 13:4203.
For these reasons, Makar will be granted judgment for interest on the principal balance of the loans owed to him at the rates agreed upon from the date of trial, until paid. Judicial interest will be allowed on all other sums awarded to Makar by this court, as a result of the partnership dissolution and for damages, from date of judicial demand, until paid.

COSTS OF COURT
Makar also contends that the trial court erred by not assessing all court costs in this suit against the Stewarts. The trial court taxed court costs in the suit to dissolve the partnership (Docket Number 51,033-A) one-half against Makar and one-fourth against Stewart and one-fourth against Mrs. Stewart. In the suit for partition of the community of acquets and gains between the Stewarts (Docket Number 50,455), the court assessed the costs equally between the Stewarts.
LSA-C.C.P. Art. 1920 provides that:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
Review of the judgment and of the record reveals no abuse of discretion on the part of the trial court nor any inequities in the assessment of costs. American Deposit Ins. Co. v. Walker, 450 So.2d 33 (La.App. 3rd Cir.1984). We affirm the trial court's assessment for costs in these consolidated proceedings.
For the foregoing reasons, the trial court's judgment distributing the assets of the partnership is reversed and set aside. It is now ordered, adjudged and decreed that the $98,440.00 of partnership assets be disbursed as follows:
(a) John Makar shall receive the full and true sum of $72,855.56, subject to a credit of $40,000.00, representing the value of the immovable property of the partnership received by him in sole ownership under the terms of the trial court judgment, and subject to a credit of $13,440.00, for partnership cash now on hand to be received by him in sole ownership, and;
(b) To the extent that the judgment awarded to Makar exceeds the partnership assets, after credit for the $40,000.00 of partnership property and $13,440.00 of partnership cash, judgment is rendered in favor of Makar and against Stewart and Mrs. Stewart jointly, severally, and in solido in the sum of $19,415.56 *179 together with legal interest thereon as hereinafter set forth; and
(c) Interest as contracted for will be awarded Makar on the principal balance of loans owed to him by the partnership from the date of trial, until paid, and on all other amounts awarded to him, as a result of the partnership dissolution, from date of judicial demand, until paid; and
(d) Wamul Ferguson Stewart shall receive the full and true sum of $12,792.22; and
(e) Tommy Gene Stewart shall receive the full and true sum of $12,792.22.
We affirm the trial court's judgment in favor of John Makar and against Tommy Gene Stewart and Wamul Ferguson Stewart jointly, severally and in solido in the sum of $1,414.14 together with legal interest thereon from date of judicial demand, until paid;
We render judgment herein in favor of John Makar and against Tommy Gene Stewart and Wamul Ferguson Stewart jointly, severally and in solido in the sum of $5,000.00 for damages, together with legal interest thereon from date of judicial demand, until paid.
In all other respects the judgment of the trial court in these consolidated cases is affirmed.
All costs of this appeal are taxed equally against Wamul Ferguson Stewart and Tommy Gene Stewart.
AFFIRMED IN PART; REVERSED IN PART: AMENDED IN PART; AND RENDERED.