568 So.2d 206 (1990)
Kenneth James GUILBEAU and Judy Hernandez Guilbeau, Plaintiffs-Appellants,
v.
C & D REPROGRAPHICS-LAFAYETTE, INC., et al. Defendants-Appellees.
No. 89-155.
Court of Appeal of Louisiana, Third Circuit.
September 27, 1990.
Writ Denied December 14, 1990.
*207 Perret, Doise, Daigle, Longman, Russo & Zaunbrecher, Henry C. Perret, Jr., Douglas F. Pedigo, Lafayette, for plaintiffs-appellants.
Taylor, Raggio & Sutherland, John H. Taylor, Baton Rouge, Fruge & Dejean, Kenneth W. Dejean, Lafayette, for defendants-appellees.
Before DOMENGEAUX, C.J., and GUIDRY and KNOLL, JJ.
*208 KNOLL, Judge.
The central issue of this appeal is whether the lessors proved by a preponderance of the evidence that they had an oral agreement with the lessee for exercising an option to extend the term of two written leases on a commercial building beyond the primary term.
Kenneth James Guilbeau and his wife, Judy Hernandez Guilbeau, appeal the judgment of the trial court which dismissed their suit against their corporate lessee, C & D Reprographics-Lafayette, Inc. (hereafter C & D Reprographics), and its personal guarantors to the leases, Paul Stipe, Cecil Button, and Don Button, for unpaid rent for a three year extension of its written leases. The trial court concluded that there was neither a provision of the written leases nor a verbal understanding among the parties regarding the method for renewing the leases beyond the primary term. Therefore, it determined that C & D Reprographics and the personal guarantors were not liable for the additional rental payments which the Guilbeaus sought.
The Guilbeaus contend on appeal that in reaching its decision, the trial court erred in: (1) considering the depositional testimony of Paul Stipe; (2) improperly characterizing the testimony of Paul Stipe as disinterested; (3) failing to find that they proved by a preponderance of the evidence that C & D Reprographics renewed the lease for an additional three years; and alternatively, (4) even considering the testimony of Paul Stipe, the trial court should have awarded them judgment against C & D Reprographics and its guarantors in the amount of $156,942 or, at least, for rental for the month of October 1985. We affirm.

FACTS
The facts of this case involve two written leases of a commercial building, one for the northern half and another for the southern half, in Lafayette, Louisiana, which the Guilbeaus own.
In 1978, prior to C & D Reprographics' entry into the picture, Russell Jackson, acting on behalf of Lafayette Shooters Supply, Inc. (hereafter Lafayette Shooters), executed a ten year lease for the Guilbeaus' building. When Lafayette Shooters outgrew the building in 1982, the Guilbeaus agreed to allow Lafayette Shooters to help secure a new lessee, but would not release Lafayette Shooters from its lease obligation; instead, the Guilbeaus agreed to credit whatever rental payments the new lessee would make to Lafayette Shooters' obligation. With the help of Lafayette Shooters, the Guilbeaus began lease negotiations with C & D Reprographics.
After trying to draft their own lease agreement, the Guilbeaus had their attorney draft two leases, one for the northern half and another for the southern half, which purportedly included the various provisions the parties required. At a meeting in late September 1982 at the office of the Guilbeaus' attorney, the parties reviewed the two leases. Russell Jackson, an intervener for Lafayette Shooters to the new leases, made suggestions for changes, and the parties agreed to increase the monthly rental for each half from $1,944 to $2,000. At that same meeting, the Guilbeaus supposedly requested a specified method for C & D Reprographics to exercise a renewal option. Despite the need for changes in the written leases, the parties agreed to sign the uncorrected leases with the understanding that the corrected leases would be later provided. Paul Stipe signed the leases on behalf of C & D Reprographics, and Stipe, Cecil Button, and Don Button, owners of C & D Reprographics at the time, personally guaranteed payment of the rent. Russell Jackson signed on behalf of Lafayette Shooters, and the Guilbeaus likewise signed.
In February of 1983, the Guilbeaus' attorney mailed the parties copies of the lease agreements which purportedly had been corrected. Although the "corrected" written leases still provided for a monthly rental of $1,944 for each half of the building, it is undisputed that during the primary term of the leases, C & D Reprographics paid the Guilbeaus $2,000 for each half of the building. Each "corrected" lease called for a three year primary term commencing on October 1, 1982, with an *209 option to extend the rental term, at an increased monthly rental, for an additional period of three years. Although the "corrected" lease agreements contained Russell Jackson's requested corrections, neither written lease specified a method of exercising the option to renew.
At the expiration of the primary term, C & D Reprographics vacated the southern portion of the building, and notified the Guilbeaus by letter dated October 1, 1985, that it intended to vacate the northern portion of the building by October 31, 1985. Attached to the termination notice was a check for $1,944.
Subsequently, the Guilbeaus initiated this legal action against C & D Reprographics, Paul Stipe, Cecil Button, and Don Button, contending that C & D Reprographics' failure to notify them six months in advance of its intention to terminate the leases constituted an exercise of its option to extend the lease term.

APPELLATE RECORD
The Guilbeaus first contend that the trial court improperly considered the depositional testimony of Paul Stipe. We agree.
Paul Stipe was a guarantor of C & D Reprographic's lease. Just prior to the taking of testimony, the trial court was informed:
"MR. TAYLOR [COUNSEL FOR C & D REPROGRAPHICS, CECIL BUTTON, AND DON BUTTON]: The only other witness I had, Your Honor, was Paul Stipe, who is a party who we had subpoenaed, lives out of the state and he is snowed in and was unable to make it. I was going to, at the end of our case, determine whether we were going to use [him], and if we were going to use him, I was going to ask the Court if we could hold the decision until we took his deposition and introduce that."
Initially in brief, Mr. Taylor, the attorney representing C & D Reprographics, Cecil Button, and Don Button, disavows the above-quoted statement, contending that the transcript is erroneous, and that in actuality counsel for the Guilbeaus made these remarks. On the other hand, counsel for the Guilbeaus, relying upon the transcript, attributes this quote to Mr. Taylor. Therefore, before reaching the merits of the Guilbeaus' assignment of error, we must first resolve this procedural question.
LSA-C.C.P. Art. 2132 provides, in pertinent part:
"A record on appeal which is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court."
Under the provisions of this article, as well as LSA-C.C.P. Art. 2088, these remedial steps may be taken either in the trial court or the appellate court.
Despite defense counsel's assertions in brief, none of the parties in the case sub judice have requested that the transcript be corrected.
Under LSA-C.C.P. Art. 372 the court reporter shall report verbatim the testimony of all witnesses, the other evidence introduced or offered, the objections thereto, and the rulings of the court thereon. The transcript shall serve as the statement of the facts of the case. LSA-C.C.P. Art. 2130. Additionally, all records prepared for filing in any appellate court shall be certified and dated by the clerk upon completion. LSA-C.C.P. Art. 2127.1.
In the present case, the court reporter certified that the record was "... a true and correct transcript of the trial had ...; that the testimony of said transcript was reported ... in shorthand and transcribed... and ... constitutes a total transcription of the requested material...." Absent a motion and hearing, or a stipulation by all counsel to the contrary, we must presume that the record before us on appeal is correct. Therefore, we are required to attribute the above-quoted statements, in accordance with the transcription of this case, to counsel for C & D Reprographics, Cecil Button, and Don Button, and shall assess the issues presented accordingly.
*210 Having disposed of this preliminary procedural matter, we now turn our attention to Stipe's deposition. The Guilbeaus argue that Stipe's deposition was not introduced into evidence, and thus was not part of the record to which the trial court should have referred in its determination of the issues presented. In further support of their argument, the Guilbeaus stress that Stipe's deposition does not appear in the appellate record.
In our research of this issue, we find that the case of Perry v. Baltimore Contractors, Inc., 202 So.2d 694 (La.App. 1st Cir.1967), writ refused, 251 La. 405, 204 So.2d 579 (1967), cert. den., 390 U.S. 1028, 88 S.Ct. 1419, 20 L.Ed.2d 285 (1968), is almost identical to the question presented. In Perry, our brethren of the First Circuit stated:
"Although the trial Judge indicates in his reasons for judgment that it was stated by Spinney that the boy bought sufficient insurance to cover operations, this was a statement by the plaintiff. It should be pointed out that the defendants' brief makes mention of a deposition by Spinney, and the minute entry shows that on March 18, the last day of the trial of the case, the court was informed that one witness for the defendants, namely, the said Miles Spinney, was absent, in the state of Maryland, and his testimony would have to be taken by deposition. The matter was then held open for the taking of the deposition and the right was reserved to counsel for the defendants for rebuttal on the said testimony by deposition. There is nothing in the records, however, which indicates that the deposition was taken or was filed in the record, despite the fact that the defendants' brief cites the deposition of Spinney in several places. In view of the fact that this deposition is not in the record that came before this Court and does not appear anywhere in the index of the record, and was apparently not filed, this Court has no alternative but to ignore the reference to the deposition of Spinney, ...." Id. at 698.
In the case sub judice, it is clear that Stipe's deposition was never admitted into evidence. Unlike the Perry case, however, our examination of the record shows no minute entry or closing statement by the trial court that it would hold the case open for the taking of the deposition. Moreover, even though we are able to determine from the trial court's written reasons for judgment that it considered Stipe's deposition (thus implying that Stipe's deposition was taken), we reaffirm the jurisprudence which states that it is improper for either the trial court or the appellate court to consider testimony never offered into evidence. Makar v. Stewart, 486 So.2d 166 (La.App. 3rd Cir.1986). Therefore, as was done in Perry, we have no alternative but to ignore Stipe's deposition.
Ordinarily, the trial court's findings of fact are reviewed under the manifest error standard. However, where some legal error, such as the improper consideration of evidence, interdicts the trial court's fact-finding process, the manifest error standard is no longer applicable, and the appellate court must make its own independent review of the record and determine whether the plaintiff proved its case by a preponderance of the evidence. Brooks v. St. Tammany Parish School Bd., 510 So.2d 51 (La.App. 1st Cir.1987), writ denied, 513 So.2d 821 (La.1987). In the present case, the trial court rested its determination of the case on Stipe's depositional testimony. Accordingly, we are compelled to make our own independent review of the record to determine whether the Guilbeaus proved their case by a preponderance of the evidence.

LEASE RENEWAL
In their petition, the Guilbeaus sought judgment against C & D Reprographics and its guarantors for three years' rent incurred for the extended rental terms.
In a supplemental petition, the Guilbeaus admitted that although the written leases provided C & D Reprographics with an option to lease the building for an additional three years, the method of exercising the option was not provided in the written leases. Nevertheless, they contend that the *211 parties orally agreed to a renewal method at the time the leases were signed whereby it was incumbent upon C & D Reprographics to notify them six months in advance of the end of the primary term if it did not intend to exercise the option. The Guilbeaus contend that C & D Reprographics failed to notify them according to their agreement; thus, by its silence, it exercised the renewal options.
It is well settled that as a general rule, testimonial evidence is inadmissible to vary, modify, contradict, or add to the terms of an authentic act or an act under private signature. LSA-C.C. Art. 1848.[1] However, it is equally well established that testimonial evidence may be admitted to show that the written agreement was incomplete and was not intended by the parties to exhibit the entire agreement. Edwards v. State, Department of Corrections, 244 So.2d 69 (La.App. 1st Cir.1971).
Initially, we observe that an earlier appellate court decision held that a written lease that provided for automatic reconduction unless written notice to the contrary was given by either party some three months prior to the stated termination date of the primary term did not contravene law, good morals, or public policy. Audrey Apartments v. Kornegay, 255 So.2d 792 (La.App. 4th Cir.1971). Accordingly, we find that the Guilbeaus' proposed method of renewal, though not exactly like the one in Audrey Apartments, would be enforceable if proven. Furthermore, it has long been held that a written lease may be extended by parol agreement. Mossy v. Mead, 2 La. 157 (1831).
The Guilbeaus argue that it was their intention all along that this renewal method applied. They contend that the renewal method was discussed among the parties and agreed upon. However, they stress that it was erroneously omitted by their attorney who prepared the final written leases.
The record shows that the parties' testimonies on either side are diametrically opposed. Mr. Guilbeau and Russell Jackson, the prior lessee of the building who appeared in the written lease at issue to consent to the lease to C & D Reprographics, testified that they noticed the renewal language was missing from the final lease draft. They further stated that the method of lease renewal was discussed in each other's presence, as well as that of lessee and the guarantors, and the attorney for the Guilbeaus was instructed to correct the leases. Although the parties signed the uncorrected leases, it was their understanding that the attorney would make the necessary corrections and attach their signature page to the newly corrected documents. Mr. Guilbeau testified that he received a large manila envelope from his attorney four or five months later, but he never looked at the leases; at the time of trial, the Guilbeaus were unable to locate their copies of the leases. Mr. Jackson testified that he reviewed the copies of the corrected leases some months after signing, and found that the corrections requested by him, none relating to lease renewal, were made.
Cecil Button testified at trial about the question of lease renewal, and it was stipulated that if Don Button testified, his testimony would be the same as Cecil's. Their testimony was that there were no discussions prior to signing the leases which touched upon the method of renewal espoused at trial by the Guilbeaus. They further stated that it was not until they gave the Guilbeaus a termination letter in October 1985, that they first heard the Guilbeaus say that C & D Reprographics' failure to notify them six months prior to the expiration of the primary term, constituted a renewal of the leases for an additional three years.
A lease is a synallagmatic contract in which the parties consent for one party *212 to use the thing of the other and the other agrees to pay a fixed price for that right. LSA-C.C. Arts. 2669, 2670, 2671. Where a lease is silent on a particular issue, and the surrounding circumstances are ambiguous with respect to that issue, this ambiguity should be interpreted in favor of the lessee. Bailey v. Franks Petroleum, Inc., 479 So.2d 563 (La.App. 1st Cir.1985).
The litigating party has established a prima facie case when the evidence in his favor is sufficiently strong for his opponent to be called upon to answer it. Richard v. Tri-J Indus. Const., Inc., 478 So.2d 215 (La.App. 3rd Cir.1985). In a case where both litigants present evidence on the same point, the decision on that point must favor one or the other, unless the evidence is exactly equal. Melancon v. Harrell, 423 So.2d 62 (La.App. 1st Cir. 1982).
In the case sub judice, it was incumbent upon the Guilbeaus to prove by a preponderance of the evidence that the parties to the leases mutually agreed to the method of lease renewal they espoused. For reasons which follow, we find that they failed to carry their burden of proof.
In addition to Paul Stipe, the Guilbeaus could have called their attorney as a witness to testify to their alleged oral agreement. If a party to a lawsuit has a witness available whom he failed to call without explanation, it is presumed that the testimony of the witness would be adverse. Succession of Lyons, 452 So.2d 1161 (La. 1984). In the case sub judice, the Guilbeaus' attorney, who practices in Lafayette and who drafted the leases, was not called to testify despite Mr. Guilbeau's assertion that his attorney was privy to the parties' discussions relative to the issue being litigated.
Considering the contradictory nature of the parties' testimony, we must presume that the testimony of the attorney would have been adverse to the Guilbeaus.[2]
Likewise, we find Mr. Guilbeau's actions in failing to review the corrected leases belie his testimony regarding the discussions relative to the method of renewal and the importance thereof. If these renewal provisions were so important to them, the Guilbeaus certainly did not evidence this when they failed to see that these provisions were included in the corrected leases.
In making these determinations, we have not overlooked Russell Jackson's testimony regarding the discussions for the method of renewing the leases. However, in reviewing his statements, we conclude that his testimony was not that of a disinterested witness and must be weighed accordingly. On the contrary, under the terms of the leases, to which he intervened, Jackson's obligations under his original lease with the Guilbeaus were proratably reduced for each month that C & D Reprographics made rental payments. Thus, Jackson directly benefited financially for each month's rent that C & D Reprographics paid. Tangentially, we also note that although the Guilbeaus' corrections to the leases were not made, Jackson's requested corrections and insertions to the leases were incorporated in the final drafts of the leases.
Therefore, after carefully reviewing the evidence, we find that the Guilbeaus failed to prove by a preponderance of the evidence that C & D Reprographics' silence constituted a three year renewal of the leases.

RENTAL FOR OCTOBER 1985
Alternatively, the Guilbeaus contend that the trial court erred in not awarding *213 them $4,000 rent for the month of October 1985.
We have reviewed the various petitions filed by the Guilbeaus, and find no allegation or prayer, seeking judgment for rent for the month of October 1985. Although there was testimony of C & D Reprographics' letter of termination and payment of one month's rental on one-half of the building, we cannot say that the pleadings were enlarged to encompass a claim for the October rent. Accordingly, this aspect of the Guilbeaus' claim is not properly before us.
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to the Guilbeaus.
AFFIRMED.
NOTES
[1] In the present case, the testimony makes it rather clear that the formalities for an authentic act were not followed in perfecting these leases. Nevertheless, since there was no objection to entry of testimonial evidence and it is clear that this case falls within an exception to the testimonial evidence rule, we shall not comment further on the manner in which these leases were witnessed and notarized.
[2] The Guilbeaus assert on appeal that the failure to call the attorney must be weighed adversely to C & D Reprographics and its guarantors. In making this argument, they premise their position on the fact that C & D Reprographics and its guarantors subpoenaed the attorney for trial. We disagree. Even considering that the Guilbeaus did not subpoena the attorney, the Guilbeaus nonetheless had the burden of proving the existence of the oral agreement. The attorney was equally accessible to the Guilbeaus, and was essential to the adjudication of the issue presented. Until the Guilbeaus proved their case by a preponderance of the evidence, C & D Reprographics and its guarantors did not have to call this witness. Thus, we cannot apply any presumption against the defendants by virtue of their failure to call the attorney as their witness.