620 So.2d 463 (1993)
Wilfred MIGUES, et al., Plaintiff-Appellant,
v.
Dr. G.D. SAGRERA, et al., Defendant-Appellee.
No. 92-1196.
Court of Appeal of Louisiana, Third Circuit.
June 9, 1993.
Thomas David Curtis, Lafayette, for Wilfred Migues et al.
Marc W. Judice, Lafayette, and Daniel L. Regard, New Iberia, for Dr. G.D. Sagrera et al.
Charles J. Boudreaux, Lafayette, for Lawrence J. Cronan & Assoc. & Lawrence J. Cronan.
Julius Willis Grubbs, Jr., New Iberia, for State of La.
Peter T. Dazzio, and Michael Marcel Remson, Baton Rouge, for Iberia General Hosp.
Before GUIDRY and WOODARD, JJ., and CULPEPPER,[*] J. Pro Tem.
WOODARD, Judge.
This is a medical malpractice suit which arises from the death of Wilfred Migues, Jr. Wilfred Migues, Sr., and Mildred Migues (plaintiffs) are the parents of the decedent who bring this action. Named as *464 defendants are Dr. G.D. Sagrera, Iberia General Hospital, Bayou Side Recovery, Lawrence J. Cronan and Associates, Lawrence J. Cronan, individually, State of Louisiana and Teche Area Vocational Technical School.
Prior to trial of the matter, all defendants, except the State of Louisiana and Teche Area Vocational/Technical School (State and Teche), were dismissed after a settlement had been reached. Plaintiffs allege that the State and Teche are liable based on the actions of its employee, nursing instructor Carole Smith (Smith).
After a four day trial, the trial court found no fault on the part of Smith and dismissed plaintiffs' suit with prejudice against the State of Louisiana. It is from this judgment that plaintiffs now timely appeal.

FACTS
On January 27, 1986 Wilfred Migues was admitted to the Bayouside Recovery Center to participate in a voluntary alcohol rehabilitation program. The medical history taken by Larry Cronan on Mr. Migues indicated that he was a mild alcoholic. It was later learned that Mr. Migues drank at least a "fifth" of alcohol per day and frequently much more.
The first twenty-four (24) hours Mr. Migues seemed to be in a fairly stable condition. However, later he began to exhibit signs of physical and mental distress, suffering from nausea, confusion and some hallucination. On the morning of January 29, at approximately 11:15 a.m., Mr. Migues became hostile and agitated. As per Dr. Sagrera's orders, Nurse Smith gave him an injection of Sparine. This was to be repeated in an hour if he continued to be agitated.
At approximately 12:15 p.m., Nurse Smith went to Mr. Migues' room to assess his condition. She was informed by Larry Cronan and his associate, Michael Lopez, who had been observing him most of the morning, that he was doing well and was not in need of the medication. She agreed with this assessment and did not give the shot of Sparine at 12:15 p.m.
At 12:20 p.m., Mr. Migues left his room and began cursing loudly and entering other patients' rooms. He was followed by Mr. Cronan and Mr. Lopez who were able to return him to his room. Mr. Cronan told Nurse Linda Eugene to "Call Dr. Sagrera, I think we've lost him."
At 12:23 p.m., Dr. Sagrera was notified by telephone of Mr. Migues' status. Dr. Sagrera changed his order to provide for 100 milligrams of Sparine to be immediately administered. Nurse Smith thereafter entered Mr. Migues' room in order to give the injection of Sparine. Mr. Migues refused to take the shot stating, "I'll help you hold my brother down, but I will not take the shot." Mr. Migues then left his room for the second time and began walking the halls and attempted to enter other patients' rooms. Mr. Cronan and Mr. Lopez attempted to follow him, but he left the floor and exited the hospital through the emergency room. Mr. Migues ended up jumping into the bayou and drowning. Attempts were made to save him, but to no avail.
Plaintiffs filed this lawsuit against defendants for the loss of their son. On appeal plaintiffs allege that the trial court erred in (1) improperly relying on the depositions of Drs. Trahan, Bernard and Sagrera regarding the standard of care; and (2) finding Nurse Smith had not breached her standard of care.

LAW
Plaintiffs contend that the manifest error standard of review should not be applied on appeal. Rather, the correct standard to be applied is preponderance of the evidence because the trial court improperly relied on depositions that were not properly admitted into evidence in reaching its determination; citing Guilbeau v. D & D ReprographicsLafayette, 568 So.2d 206 (La.App. 3 Cir.1990), writ denied 571 So.2d 653 (La.1990), in support. Guilbeau, supra states at page 210:
Ordinarily, the trial court's findings of fact are reviewed under the manifest error standard. However, where some legal error, such as the improper consideration of evidence, interdicts the trial court's fact-finding process, the manifest *465 error standard is no longer applicable, and the appellate court must make its own independent review of the record and determine whether the plaintiff proved its case by a preponderance of the evidence. Brooks v. St. Tammany Parish School Bd., 510 So.2d 51 (La.App. 1st Cir.1987), writ denied, 513 So.2d 821 (La. 1987).
We find Guilbeau distinguishable from the case at hand. In Guilbeau, the trial court rested its determination of the case on Stipe's depositional testimony. In the case, sub judice, the record is replete with evidence on which the court relied to make its determination and did not base its opinion on one depositional statement only. Therefore Guilbeau is not applicable and the correct standard of review is the manifest error rule, as stated in Novak v. Texada et al. Clinic, 514 So.2d 524 (La.App. 3 Cir.1987), writ denied 515 So.2d 807 (La. 1987), at page 525 as follows:
It is well settled that an appellate court must give great weight to the conclusions reached by the trier of fact and, if there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed unless manifestly erroneous. Anthony v. Hospital Service Dist. No. 1, 477 So.2d 1180 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986); Senegal v. George Theriot's, Inc., 445 So.2d 137 (La.App. 3rd Cir.1984), writ denied, 448 So.2d 114 (La.1984).
The plaintiffs next contend that the trial court erred in finding that Nurse Carole Smith performed her duties in accordance with the applicable standard of care.
Nurses and other health care providers are subject to the same standard as physicians. It is a nurse's duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his or her best judgment, in the application of his or her skill to the case. Norton v. Argonaut Insurance Company, 144 So.2d 249 (La.App. 1st Cir.1962). Novak, supra 514 So.2d at page 526.
In order for the plaintiffs to succeed in a medical malpractice suit, they must prove through expert testimony that Carole Smith deviated from the standard of care. Peters v. ABC Ins. Co., 552 So.2d 430 (La.App. 4 Cir.1989). The trial Judge noted in his reasons that the expert testimony of Nurse Harriet M. Westell overcame the testimony of Nurse Jean Pecot regarding the applicable standard of care. Applying the standard of care as stated by Nurse Westell, the trial court found that Carole Smith conveyed sufficient information to Dr. Sagrera regarding Mr. Migues' condition; that she acted in accordance with the doctor's orders; that she was not under a duty to restrain Mr. Migues when there were no doctor's orders to that effect; and that it was not within the range of alternatives to override the physician's orders without a compelling reason. The trial court consequently concluded that there was no liability on the part of Nurse Smith.
After thorough review of the record, including the pertinent expert testimony, we do not find that the trial court erred in concluding that Nurse Smith's conduct met the acceptable medical standard of care.
The judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiffs.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.