ROBERT A. CHAISSON, Judge.
12This is a medical malpractice suit brought by Rae Crane Pertuit as a result of the death of her husband, James Richard Pertuit, Jr., while under the treatment and care of Dr. William Johnston, Jr., at East Jefferson General Hospital (“EJGH”). Mrs. Perfyit appeals a summary judgment granted in favor of Dr. Johnston, dismissing him from the suit.[1] Upon de novo review, for the following reasons, we vacate the trial court’s grant of summary judgment and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
After suffering a traumatic brain injury in an accident at his farm on November 6, 2006, Mr. Pertuit came under the care of Dr. Johnston, a neurosurgeon, at EJGH. *1108 On November 7, 2006, Dr. Johnston placed a right frontoventrieulostomy drain tube in Mr. Pertuit’s brain, which tube was replaced |son November 13, 2006, due to an obstruction. On November 22, 2006, at approximately 12:30 p.m., Mr. Pertuit’s breathing tube was removed and he was removed from the ventilator. After performing a neurological assessment at 9:30 p.m. that evening, Dr. Johnston removed the frontoventrieulostomy tube from Mr. Pertuit’s brain. At some time during the night, Mr. Pertuit’s condition deteriorated and he •ivas found unresponsive at 7:00 a.m. on November 23, 2006. Dr. Johnston placed a new left frontoventrieulostomy tube in Mr. Pertuit’s brain; however, the brain damage was irreversible and Mr. Pertuit died on November 29, 2006.
On October 14, 2009, Mrs. Pertuit filed a petition for damages against both Dr. Johnston, for his alleged negligence, and against EJGH, for the alleged negligence of its nurses.[2] Dr. Joan Wojak, an expert obtained by Mrs. Pertuit to provide an opinion as to the negligence of Dr. Johnston, rendered a report on January 14, 2007, and was deposed by defendants on November 5, 2011. Two and one-half years later, on May 30, 2014, six weeks prior to a July 14, 2014 trial date, Dr. Johnston filed a motion for summary judgment in which he argued that Dr. Wojak, who is not a neurosurgeon, is not qualified to render standard of care opinions against him. After argument on the motion on June 13, 2014, but without an evidentiary hearing, the trial court found that Dr. Wojak was not qualified to render an expert opinion against Dr. Johnston, and that without an expert opinion as to Dr. Johnston’s negligence, there was no genuine issue of material fact remaining regarding his lack of negligence. The trial court therefore granted Dr. Johnston’s motion for summary judgment. The trial court also denied Mrs. Pertuit’s instanter request for an extension of time to obtain a substitute expert opinion.
|4On appeal, Mrs. Pertuit contends that the trial court erred in finding that Dr. Wojak is not qualified to render an expert opinion in this case. She further contends that the trial court erred by not following the appropriate procedure in making the determination regarding Dr. Wojak’s qualifications.
Without reaching the merits of whether Dr. Wojak is qualified to render an opinion regarding any aspect of Dr. Johnston’s treatment of Mr. Pertuit, we find that, under the facts of this case, the trial court erred in the procedure used to disqualify Dr. Wojak. Having found that the proper procedure was not used to disqualify Dr. Wojak, we conclude that it was premature for the trial court to rule on the motion for summary judgment. We therefore vacate the grant of summary judgment and remand this matter to the trial court for further proceedings.
DISCUSSION
Appellate courts review a judgment granting a motion for summary judgment on a de novo basis. Gutierrez v. State Farm Fire & Cas. Ins. Co., 13-341 (La.App. 5 Cir. 10/30/13), 128 So.3d 509, 511. Thus, this Court uses the same criteria as the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. Because it is the applicable substantive law that determines materiality, whether a particular *1109 fact in dispute is “material” for summary-judgment purposes can be seen only in light of the substantive law applicable to the case. Luther v. IOM Co. LLC, 13-0353 (La.10/15/13), 130 So.3d 817, 822.
In a medical malpractice action against a physician, the plaintiff must establish by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the alleged negligence and the plaintiffs injuries resulting therefrom. La. R.S. 9:2794(A); Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, 1233. Because of the complex medical and factual issues involved in most medical malpractice cases, expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached. Only in cases where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony is such testimony unnecessary. Id. at 1234.
The admissibility of expert testimony in Louisiana is governed by La.-C.E. art. 702, which provides that “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.”
The qualification of expert witnesses in medical malpractice cases is specifically governed by La. R.S. 9:2794(D), which provides, in pertinent part:
(1)In a medical malpractice action against a physician ... for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:
(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.
(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.
(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.
(d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq.,
[[Image here]]
(2)For the purposes of this Subsection, “practicing medicine” ' or “medical practice” includes but is not limited to training residents or students at an accredited school of medicine or osteopathy or serving as a consulting physician to other physicians who provide direct patient care, upon the request of such other physicians.
li(3) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing in that area.
(4) The court shall apply the criteria specified in paragraphs (1), (2), and (3)of this Subsection in determining whether a person is qualified to offer expert testimony on the issue of whether the physician departed from *1110 the accepted standards of medical care.
[[Image here]]
In his motion for summary judgment, Dr. Johnston argues that Dr. Wojak, Mrs. Pertuit’s sole proffered expert against him, is not qualified to render such opinion, and therefore there is no genuine issue of material fact regarding his lack of negligence in the treatment of, or causation of any injury to, Mr. Pertuit. Specifically, Dr. Johnston repeatedly asserts that Dr. Wo-jak is not a neurosurgeon, a fact that Mrs. Pertuit does not dispute.
We note that La. R.S. 9:2794 has no absolute requirement that a proffered expert must practice in the same specialty as the defendant, or be board certified in that specialty. Rather, the statute allows that an expert may be qualified on the basis of her “training or experience,” and that board certification and practice in the area of specialty are factors that the trial court must consider in making this determination. Only in cases where the alleged acts of negligence raise issues peculiar to the particular specialty involved is expert testimony limited to those qualified in that specialty. Howard v. Vincent, 11-0912 (La.App. 4 Cir. 03/28/12), 88 So.3d 1219, 1222, writ denied, 12-0967 (La.6/22/12), 91 So.3d 970. Furthermore, our jurisprudence has recognized that where medical disciplines overlap, it is appropriate to allow a specialist in one field to give expert testimony as to the standard of care applicable to areas of the practice of medicine common to both disciplines. See, Coleman v. Deno, 99-2998 (La.App. 4 Cir. 04/25/01), 787 So.2d 446, 448, aff'd in part, modified in part, and remanded, 01-1517 (La.01/25/02), 813 So.2d 303.
In the present case, Mrs. Pertuit’s petition states a number of allegations of negligence on the part of Dr. Johnston, including that he failed “to review the record or ascertain staff observations.” Mrs. Per-tuit’s theory of Dr. Johnston’s negligence in this regard is that Mr. Pertuit’s medical chart indicated that his blood pressure was unstable, that increasing amounts of the vasodilator drug Nipride were being used to stabilize his blood pressure, and that Dr. Johnston failed to ascertain this fact from the chart either before or after removal of the frontoventriculostomy tube.[3] It is this alleged act of negligence that Mrs. Pertuit maintains occurred in treatment that is not peculiar to the discipline of a neurosurgeon, but rather falls within an area of “overlap” of disciplines between that of Dr. Wojak and that of Dr. Johnston. Dr. Johnston, on the other hand, maintains that as a neurosurgeon, he is held to the standard of care for a neurosurgeon, and Dr. Wojak is not qualified to render an expert opinion as to any aspect of his treatment of Mr. Pertuit.
There is no dispute that Dr. Wojak does not practice in the same specialty as Dr. Johnston, who is a neurosurgeon. Dr. Wo-jak, who is the Director of Neuroradiology at Our Lady of Lourdes Regional Medical Center in Lafayette, is an interventional neuroradiologist. She has also been an associate professor in neuroradiology at LSU Medical Center. She concedes that she is not qualified to offer an expert opinion regarding the standard of care as to any treatment rendered by Dr. Johnston that is peculiar to the specialty of neurosurgery, such as, for example, the actual surgical procedure to insert and remove the frontoventriculostomy tube. Dr. Wojak maintains, however, that in her practice she works |sclosely with neurosurgeons in the treatment of neurosurgery patients, and that there is overlap between *1111 her area of practice and that of neurosurgeons.[4] By choosing an expert who is not a neurosurgeon, Mrs. Pertuit has admittedly limited herself to expert testimony regarding this alleged area of overlap, and has precluded any expert testimony regarding treatment that is solely within the province of the discipline of a neurosurgeon.
However, the fact that Dr. Wojak is not a neurosurgeon is not dispositive of the issue of her ability to testify as an expert in this matter. Further inquiry is necessary to determine whether she is able to testify based upon her training and experience, and whether or not any alleged act of negligence on the part of Dr. Johnston falls within an area of overlap between Dr. Wojak’s specialty and that of Dr. Johnston. Our initial inquiry, however, is whether the trial court utilized the appropriate procedure to make this determination.
In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court set a new standard to assist trial courts in evaluating the admissibility of expert testimony and required the district courts to perform a “gatekeeping” function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Daubert, 113 S.Ct. at 2795. The Daubert standard, which was adopted by the Louisiana Supreme Court in State v. Foret, 628 So.2d 1116 (La.1993), requires that expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La.-C.E. art. 702. Foret, 628 So.2d at 1123. The decision in Daubert, however, concerned the admissibility of the expert’s opinion based on methodology used and not on his or her qualification as an expert in the area 19tendered, which is the issue raised in the present case. The Louisiana Supreme Court addressed the issue of an expert’s qualification, in the area tendered in the case of Cheairs v. State ex rel. Department of Transp. and Development, 03-0680 (La.12/3/03), 861 So.2d 536.
In Cheairs, the Court adopted a three-prong inquiry to give trial courts more comprehensive guidance in determining the admissibility of expert testimony. The admission of expert testimony is proper only if: (1) the proposed expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert-, and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue. Cheairs, 861 So.2d at 542. As explained in Cheairs, these factors are reflective of the considerations under La.-C.E. art. 702 and whether the admissibility of the expert testimony would assist the trier of fact to understand the evidence or to determine a fact in issue. The Court also recognized that experience alone is normally sufficient to qualify a witness as an expert. Id. at 541-42.
Although the discussions in Daubert, and its progeny, clearly contemplate the trial court conducting an evidentiary hearing in order to perform its gatekeeping function, the Louisiana Supreme Court, since its adoption of the Daubert standard *1112 in Foret, has not established a rule that mandates an evidentiary hearing in all cases where an expert’s qualifications are challenged. However, the discussion in Foret clearly indicates that the Louisiana Supreme Court also contemplates the holding of an evidentiary hearing in most cases where an expert’s qualifications are challenged. In Foret, the Court noted that the tardy submission of the expert’s report (on the morning of trial) prevented the trial court from Improperly exercising its gatekeeping function. The Court further stated: “[t]he record is silent regarding any efforts by the trial court to determine, via some sort of evidentiary hearing, whether or not the [expert’s] confidence in his ability to diagnose [the condition] was well-founded.” Foret, supra at 1123 (emphasis added). The Court additionally stated: “[i]f the trial court had conducted a hearing, it might have discovered the misgivings many experts and courts alike have with this type of testimony [regarding Child Sexual Abuse Accommodation Syndrome].” Id. at 1124. And finally, the Court noted that the rules that it established in the decision regarding the admissibility of evidence in the particular field of expertise in question, did not preclude future trial courts, “performing [their] ga-tekeeping function via an evidentiary hearing,” from considering the admissibility of such evidence. Id. at 1131.
Likewise, in Cheairs[5] the Louisiana Supreme Court did not establish a rule that mandates an evidentiary hearing whenever an expert’s qualifications are challenged. However, the Court recognized the benefit of such hearing, not only to the trial court, but also to a reviewing appellate court, when it stated: “[w]e have closely reviewed the district court’s decision to qualify [plaintiffs expert] ... in light of the evidence presented at the pre-trial lDau-bert’ hearing ...” Cheairs, supra at 543 (emphasis added).
It is clear from a reading of Foret and Cheairs, and their progeny, that the generally accepted procedure used to challenge an expert’s qualifications is to make a Daubert challenge, which generally will result in an evidentiary hearing regarding the expert’s qualifications. However, we can envision cases in which the area of discipline of the proffered expert is so greatly divergent from that of the defendant, and the alleged acts of negligence are so clearly limited to treatment |nthat is unique to the defendant’s specialty, that such an evidentiary hearing may not be necessary, although we would anticipate that such cases would occur infrequently. We therefore are not prepared to establish a hard-fast rule that mandates an eviden-tiary hearing whenever an expert’s qualifications are challenged. A particular specialist’s knowledge of the subject matter on which he is to offer testimony is determined on a case by case basis. Howard, supra at 1222. Likewise, we conclude that the determination of whether an evidentia-ry hearing is necessary must also be made on a case by case basis.
In the present case, Dr. Johnston did not file a motion in limine (or any similar type motion) challenging Dr. Wojak’s qualifications, in effect side-stepping the generally accepted procedure. He thereby virtually invited the trial court to perform its gatekeeping function without conducting an evidentiary hearing. In response to Mrs. Pertuit’s complaint regarding the procedure used, Dr. Johnston contends that he did not argue to the trial court that Dr. Wojak’s testimony was inadmissible, but rather that it was insufficient to meet La. R.S. 9:2794’s burden of proof. He *1113 further contends, without citation to authority, that a 9:2794 analysis does not require a Daubert challenge or determination, or an evidentiary hearing.
Clearly, when a litigant seeks a ruling that his opponent’s expert is not qualified to render an opinion, he is seeking a ruling on admissibility of that expert’s opinion. Equally clear is that in this case, the trial court, in finding that Dr. Wojak was not qualified to render an opinion in this matter, was ruling Dr. Wojak’s opinion inadmissible. Anything short of a total exclusion of her opinion would have required the trial court to engage in an impermissible weighing of the 112experts’ contradictory opinions, thereby rendering summary judgment inappropriate.[6]
On the particular facts of the case before us, where there appears to be a color-able claim of overlap between the disciplines of Dr. Wojak and Dr. Johnston, we find that the proper procedure for Dr. Johnston to have followed would have been to make a Daubert challenge, thus affording Mrs. Pertuit an evidentiary hearing on Dr. Wojak’s qualifications. See Guardia v. Lakeview, 08-1369 (La.App. 1 Cir. 05/08/09), 13 So.3d 625 (appellate court found summary judgment premature where trial court disqualified plaintiffs expert without first conducting a hearing on defendant’s motion in limine to strike plaintiffs expert to determine if expert’s testimony constituted reliable expert testimony as contemplated in Cheairs). We therefore conclude that the trial courterred in not affording Mrs. Pertuit an evidentiary hearing on Dr. Wojak’s qualifications before making the determination that she was not qualified. Having found that the appropriate procedure was not followed to determine Dr. Wojak’s ability to testify in this matter, and having vacated the grant of summary judgment as premature, we pretermit any discussion of the merits of Dr. Wojak’s qualifications.
CONCLUSION
Upon de novo review, we conclude that the trial court’s ruling on the motion for summary judgment was premature. We therefore vacate the trial court’s grant of summary judgment in favor of Dr. Johnston and remand the matter to the trial court for an evidentiary hearing on Dr. Wojak’s qualifications prior to a ruling on the motion for summary judgment.

JUDGMENT VACATED

. Subsequent to the filing of suit, Dr. Johnston passed away. He is now represented in this suit by his wife, Rosalie Johnston.

. Mrs. Pertuit timely filed an appropriate request for a medical review panel as required by Louisiana law; however, the parties never convened a panel for consideration of this claim.

. Dr. Johnston testified in his deposition that Mr. Permit's blood pressure was stable.

. Dr. Wojak’s curriculum vitae indicates that she received her medical degree from New York University School of Medicine, and that she has taught at Princeton, NYU and LSU medical schools. It also indicates that she attended a residency program in neurosurgery at NYU in 1988-1989, although she did not complete that program, opting instead to pursue interventional neuroradiology.

. In Cheairs, the defendant filed a pre-trial motion in limine to exclude the plaintiff’s expert’s testimony, and the trial court conducted an evidentiary hearing on the motion.

. In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Gatrett, 04-0806 (La.06/25/04), 876 So.2d 764, 765.