IN RE:  MEDICAL REVIEW     \*     NO. 2021-CA-0698
COMPLAINT BY DARON
DOWNING, ANDRUS     \*
DOWNING, ANDRIA          COURT OF APPEAL
DOWNING, AND ANDRE     \*
DOWNING FOR MELISSA         FOURTH CIRCUIT
DOWNING (D)     \*

                       STATE OF LOUISIANA
VERSUS           \* \* \* \* \* \* \*

**CONSOLIDATED WITH:**          **CONSOLIDATED WITH:**

**ANDRIA DOWNING, EXECUTRIX**       **NO. 2021-CA-0699**
**OF THE ESTATE OF MELISSA**
**DOWNING (MELISSA DOWNING)**
**ON BEHALF OF THE ESTATE OF**
**MELISSA DOWNING, DARON**
**DOWNING, ANDRUS DOWNING,**
**ANDRIA DOWNING, ANDRE**
**DOWNING, AND AMARYD**
**DOWNING**

**VERSUS**

**THE STATE OF LOUISIANA**
**THROUGH THE BOARD OF**
**SUPERVISORS LOUISIANA**
**STATE UNIVERSITY AND**
**AGRICULTURE AND**
**MECHANICAL COLLEGE ON**
**BEHALF OF THE LSU HEALTH**
**SERVICES CENTER (A/K/A**
**UNIVERSITY HOSPITAL,**
**UNIVERSITY MEDICAL**
**MANAGEMENT CORPORATION**
**D/B/A INTERIM LSU HOSPITAL,**
**CHARLES SPURGEON CLARK,**
**JR., DR. MD, WILLARD WARREN**
**MOSIER, JR., MD, JENNIFER**
**MOONEY, MD, REBECCA**
**WARNER SCHROLL, MD, ALLEN**
**BLAND MARR, MD, SAMUEL E.**
**VICTORIA, JR., MD**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-09813, DIVISION "J"
Honorable D. Nicole Sheppard
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Sandra C. Jenkins, Judge Dale N. Atkins)

**JENKINS, J., CONCURS IN THE RESULT.**

Wanda Anderson Davis
SULLIVAN, DUPRÉ AND SOLOUKI, L.L.C.
3838 North Causeway Blvd., Suite 3010
Metairie, LA 70002

      COUNSEL FOR PLAINTIFFS/APPELLANTS


C. Wm. Bradley Jr.
Richard S. Crisler
Benjamin J. Biller
BRADLEY MURCHISON KELLY & SHEA, LLC
1100 Poydras Street, Suite 2700
New Orleans, LA 70163-2700

      COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**May 26, 2022**

*DNA*
*EAL*

This is a medical malpractice action. Daron Downing, Andrus Downing, Andria Downing, Andre Downing, and the Estate of Melissa Downing (hereinafter collectively "Appellants"), appeal the trial court's August 18, 2021 grant of summary judgment in favor of Appellee, University Medical Center Management Corp. d/b/a Interim LSU Hospital (hereinafter "Interim LSU").

Interim LSU supported its motion for summary judgment with the expert report of the Medical Review Panel (hereinafter "MRP"), which found that the record contained no evidence that Interim LSU had deviated from the applicable standard of care. The trial court sustained Interim LSU's objections to the admissibility of the Affidavit of Appellants' expert; determined that Appellants presented no other expert evidence to contest the motion for summary judgment; and granted summary judgment in favor of Interim LSU.

For the following reasons, we find that the Affidavit of Appellants' expert was admissible and that the expert's findings created genuine issues of material fact to defeat Interim LSU's motion for summary judgment. Accordingly, we reverse the judgment and remand for further proceedings consistent with this Opinion.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This medical malpractice claim arises from medical treatment rendered to Melissa Downing (hereinafter "Ms. Downing") on July 13, 2014, at Interim LSU in connection with injuries Ms. Downing sustained following a motor vehicle accident on July 11, 2014. In the accident, Ms. Downing sustained serious injuries, including bilateral rib fractures, liver lacerations, and a leg laceration.

On July 13, 2014, Ms. Downing's family members, including her daughter, Andria Downing, visited her at the hospital. During the family's visit, Ms. Downing "coded." She suffered an anoxic brain injury and septic shock. Ms. Downing remained in a comatose state until she died on April 20, 2015. The death certificate listed Ms. Downing's cause of death as respiratory failure, anoxic brain injury, and motor vehicle accident.

Appellants presented allegations of medical malpractice to the MRP against Interim LSU and other health care providers on July 14, 2015. The MRP met on November 25, 2019. As to Interim LSU, the MRP unanimously concluded in a report (hereinafter "MRP report") that "[t]here is nothing in the record presented to indicate that the hospital or its employees deviated from the standard of care."

Appellants filed a Petition for Damages (hereinafter "Petition") on February 24, 2020, naming Interim LSU as a defendant, along with the State of Louisiana and six physicians.[1] The Petition alleged, in part, that on July 13, 2014, Ms.

---

[1] The other named defendants included the State of Louisiana through the Board of Supervisors, Louisiana State University and Agriculture and Mechanical College on Behalf of the LSU Health Services Center (a/k/a University Hospital); Charles Spurgeon Clark, Jr., MD; Warren (Willard) Mosier, Jr., MD; Jennifer Mooney, MD; Rebecca Warner Schroll, MD; Allen Bland Marr, MD; and Samuel E. Victoria, Jr., MD. A January 11, 2021 consent judgment subsequently dismissed Dr. Schroll as a defendant.

Downing's family members observed that Ms. Downing was disconnected from oxygen for approximately fifteen minutes and left unattended in a bed in the hallway. Further, the Petition contended that the family members' observations were not documented in the medical records. The Petition also stated that Ms. Downing suffered septic shock on July 13, 2014, because Interim LSU's physicians failed to properly identify a bowel in the abdominal cavity, resulting in the need for emergency surgery. Appellants alleged that these acts of Interim LSU personnel breached the standard of care and that the breach resulted in Ms. Downing's death.

Interim LSU filed a motion for summary judgment on August 26, 2020, and attached the MRP report in support of its motion. It maintained that the MRP's unanimous finding constituted *prima facie* evidence that Interim LSU had complied with the applicable standard of care. Additionally, Interim LSU contended that Appellants had not put forth any expert medical testimony to support their claims. Hence, Interim LSU asserted that there was an absence of factual support for an essential element of Appellants' claims. Interim LSU argued that because Appellants could not meet their evidentiary burden of proof, Interim LSU was entitled to summary judgment as a matter of law.

Subsequent to the filing of the motion for summary judgment, Appellants retained an expert, Dr. David Mayer, and conducted additional discovery. Appellants opposed the motion for summary judgment with an affidavit from Dr. Mayer, his curriculum vitae (hereinafter "CV"), and his preliminary report (hereinafter collectively "the Affidavit"). Appellants also attached as exhibits the

depositions of individual defendant physicians, Dr. Willard W. Mosier, Jr.,[2] and Dr. Jennifer L. Mooney; the depositions of nurses, Rayna Turner, RN, Brenda P. Laws, LPN, Devin Johnson, RN; and an affidavit from Andria Downing. Appellants argued that, at minimum, their medical evidence established that the standard of care was to maintain continuous oxygen on Ms. Downing; that Ms. Downing was removed from oxygen for approximately 15 minutes during her transfer to another room; and that Interim LSU's failure to maintain continuous oxygen caused Ms. Downing to code and suffer an anoxic brain injury, which ultimately resulted in her death.

In its reply memorandum, Interim LSU cited La. C.C.P. art. 966(D)(2)[3] to object to the introduction of Dr. Mayer's Affidavit into evidence. Interim LSU

_____

[2] Dr. Mosier was also referenced as Dr. "William" Mosier in some pleadings. For purposes of this opinion, Dr. Mosier shall be referenced as Dr. "Willard" Mosier, the name listed in his deposition testimony.

[3] Louisiana Code of Civil Procedure Article 966(D) states the following:

> (1) The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
>
> (2) The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.
>
> . . . .

4

argued that Dr. Mayer's Affidavit did not comport with the requirements of La. C.C.P. art. 967(A) and (B)[4] in that: (1) Dr. Mayer failed to establish the requisite personal knowledge for his proposed opinion, failed to provide an adequate factual basis for any opinion, and did not identify the medical records he relied on in formulating his opinion, and (2) Dr. Mayer's opinions on causation were entirely conclusory and speculative. As such, Interim LSU asserted that Dr. Mayer's Affidavit should not be considered for purposes of contesting summary judgment.

A contradictory hearing on the motion for summary judgment was held on July 1, 2021. After the hearing commenced and counsel made their appearances

---

H. On review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument.

[4] Louisiana Code of Civil Procedure Article 967(A) and (B) state the following:

A. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

B. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

on the record, the trial court immediately declared that it agreed with Interim LSU's objections to Dr. Mayer's Affidavit. The trial court reasoned the following:

> The Court first must address the objections to plaintiff's exhibits contained in the mover's reply brief. The defendant contends that Dr. Mayer's affidavit, CV and report fail to establish the requisite personal knowledge and adequate factual basis for his proposed opinions. Additionally, the defense argues that Dr. Mayer's opinions on causation are conclusory and speculative, lacking any basis and specific facts, data and scientific evidence. This Court agrees. While it is not disputed that Dr. Mayer may in fact qualify as an expert, the submissions by plaintiff in regards to the doctor's assessment of the alleged breach of duty on behalf of [Interim LSU] are insufficient to meet the requirements of La. C.C.P Articles 966 and 967. Further, the submissions by plaintiff in this matter fails [sic] to demonstrate what medical records Dr. Mayer relied upon to arrive at his conclusions. Given those considerations, the defense's objection to plaintiff's Exhibit 1 is sustained per La. C.C.P. Articles 966 and 967.
>
> Having disposed of the defense's objections, we now look to the substance of the instant motion. The entirety of this dispute hinges on the plaintiff's alleged failure to demonstrate expert evidence establishing the local community standards of care applicable to LSU Interim nurses; that the Interim LSU nurses failed to comply with the standard of care; and number three, that any alleged failure to comply what [sic] that standard of care by the nurses proximately caused Ms. Downing's death.
>
> The Court finds that the record is devoid of expert evidence submitted such that the motion should be denied. Plaintiff's submission and opposition to this motion have not adequately demonstrated to this Court that the genuine issue of material fact exists on either of these points. Accordingly, the motion is hereby granted.

The trial court rendered written judgment on August 18, 2021, in favor of Interim LSU and against Appellants, dismissing all claims with prejudice. Further, the trial court granted summary judgment in accord with La. C.C.P. art. 966(G),[5]

---

[5] Louisiana Code of Civil Procedure Article 966(G) provides as follows:

> G. When the court grants a motion for summary judgment in accordance with the provisions of this Article, that a party or non-party is not negligent, is not at fault, or did not cause in whole or in part the injury or harm alleged, that party or non-party shall not be

ordering that no evidence could be admitted at trial to establish the fault of Interim

LSU, precluding any parties from referencing directly or indirectly any alleged

fault on the part of Interim LSU, or submitting to the jury or including on the jury

verdict form any fault allegations against Interim LSU. The judgment was

designated as a final judgment under La. C.C.P. art. 1915[6] for the purpose of

appeal. [7]

---

considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or non-party. During the course of the trial, no party or person shall refer directly or indirectly to any such fault, nor shall that party or non-party's fault be submitted to the jury or included on the jury verdict form.

[6] Louisiana Code of Civil Procedure Article 1915(B)(1) provides:

When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

[7] The judgment included the following:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Motion for Summary Judgment is hereby GRANTED in favor of Defendant Interim LSU and against Plaintiffs, and that Interim LSU is hereby DISMISSED from this action WITH PREJUDICE;

IT IS FURTHER ORDERED ADJUDGED AND DECREED that the Motion for Summary Judgment is GRANTED in accordance with La. C.C.P. art. 966(G); and accordingly, no evidence shall be admitted at trial to establish the fault of Interim LSU, and no party or person shall refer directly or indirectly to any such alleged fault, nor shall any such alleged fault be submitted to the jury or included on the jury verdict form.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this is designated as a final judgment under La. C.C.P. art. 1915 for the purpose of appeal.

Appellants timely filed a motion for devolutive appeal, and this appeal followed.

## DISCUSSION

### *STANDARD OF REVIEW*

Appellate courts review the grant or denial of a motion for summary judgment *de novo*. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181, 1999-2257, p. 7 (La. 2/29/00), 755 So.2d 226, 230. A motion for summary judgment should be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The burden of proof is on the moving party. La. C.C.P. art. 966(D)(1). Notwithstanding, if the mover will not bear the burden of proof at trial on the issue that is before the court in the summary judgment motion, the mover is not required to negate all essential elements of the adverse party's claim, but rather to point out the absence of factual support for one or more essential elements claims. *Id.* Thereafter, if the non-moving party fails to provide factual evidence to establish that s/he will be able to satisfy the evidentiary burden of proof at trial, no genuine issue of material fact exists, and summary judgment is appropriate. *See id.*; *Deruise-Pierce v. Univ. Health Care Sys., L.C.*, 2018-0160, p. 7 (La. App. 4 Cir. 10/24/18), 258 So.3d 150, 154.

"In a ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether a genuine issue of triable fact remains." *Deroche v. Tanenbaum*, 2013-0979, p. 11 (La. App. 4 Cir. 12/18/13), 131 So.3d 400, 408 (citing *Hines v. Garrett*, 2004-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765). "Factual inferences reasonably drawn from the evidence must be construed in

favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Id.* (citing *Willis v. Medders*, 2000-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050). Whether a particular fact in dispute is "material" for purposes of summary judgment is determined in light of the substantive law applicable to the case. *Id.* (citing *Richard v. Hall*, 2003-1488, p. 5 (La. 4/23/04), 874 So.2d 131, 137).

### *BURDEN OF PROOF/MEDICAL MALPRACTICE FAULT ELEMENTS*

A plaintiff must prove the following three elements by a preponderance of the evidence to prevail in a medical malpractice action: (1) the applicable standard of care expected of physicians in his/her medical specialty, (2) a violation of that standard of care, and (3) a causal connection between the alleged negligent treatment and the plaintiff's injuries. *Deruise-Pierce*, 2018-0160, pp. 7-8, 258 So.3d at 154-55 (citations omitted).

To satisfy these medical malpractice fault elements, well-settled jurisprudence requires the plaintiff to secure expert testimony, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *See Pfiffner v. Correa*, 1994-0924, 1994-0963, 1994-0992, pp. 9-10 (La. 10/17/94), 643 So.2d 1228, 1234. "The requirement of producing expert testimony is especially apt, when as here, the defendants have filed summary judgment motions and supported such motions with expert opinion evidence that their treatment met the applicable standard of care." *Jordan v. Cmty. Care Hosp.*, 2019-0039, p. 13 (La. App. 4 Cir. 7/24/19), 276 So.3d 564, 577. The MRP report is admissible as expert opinion evidence in a motion for summary judgment and may suffice to constitute a *prima facie* case that no issues of material fact exist, thus shifting the burden of proof to the plaintiff. *See Mitchell v. Kenner*

9

*Reg'l Med. Ctr.*, 2006-620, p. 6 (La. App. 5 Cir. 1/30/07), 951 So.2d 1193, 1196.

Nonetheless, as with any other expert testimony, the MRP report is subject to review and may be contested. *See Deruise-Pierce*, 2018-0160, pp. 8-9, 258 So.3d at 155.

## *ASSIGNMENTS OF ERROR*

Appellants raise the following assignments of error:

1. The trial court erred in not having a contradictory hearing to allow oral argument at the hearing on the motion for summary judgment.

2. The trial court erred in granting the motion for summary judgment in favor of Interim LSU based on the following:

   a. The trial court erred in determining that the report of Dr. Mayer, Appellants' medical expert, failed to establish the requisite personal knowledge and adequate factual basis for his proposed opinion.

   b. The trial court erred in determining that Dr. Mayer's opinions on causation were conclusory and speculative, lacking any basis in specific facts, data, and scientific evidence.

   c. The trial court erred in holding that the record was devoid of expert evidence submitted to raise material issues of fact as to whether the breach of the standard of care by the nurses proximately caused the death of Melissa Downing.

   d. The trial court erred in disregarding the unobjected to evidence regarding the contested issues of fact and the deposition testimony of treating physicians and employees of Interim LSU establishing the breach of the standard of care by Interim LSU's nursing staff.

3. The trial court erred in granting the motion for summary judgment in accordance with La. C.C.P. art. 966(G).

*Assignment of Error Number 2*

To begin our review, we first consider Appellants' second assignment of error regarding whether the trial court erred in granting the motion for summary judgment. We commence with this error because its resolution is dispositive as to Appellants' remaining errors, which concern whether the trial court erred in rendering judgment without hearing oral argument and erred in granting summary judgment pursuant to La. C.C.P. art. 966(G).

Appellants' arguments that the trial court erred in granting the motion for summary judgment essentially fall within two categories: (1) that the Affidavit of Dr. Mayer was admissible and sufficient to show that Interim LSU breached the standard of care, proximately causing Ms. Downing's death; and (2) that the deposition testimony of other health care professionals and Andria Downing's affidavit also created issues of material fact regarding Interim LSU's potential liability that were sufficient to deny the motion for summary judgment.

## I. Dr. Mayer's Affidavit

### A. Admissibility Objections - La. C.C.P. art. 967(A)

Appellants assert that the trial court improperly sustained Interim LSU's procedural objection to the admissibility of Dr. Mayer's Affidavit. They maintain that Dr. Mayer's Affidavit satisfied the personal knowledge and sworn records requirements of La. C.C.P. art. 967(A) in that the medical record entries referenced in Dr. Mayer's Affidavit adequately identified the medical records he relied upon to reach his opinion and the entries sufficiently established a factual predicate for his opinions. Interim LSU counters that Dr. Mayer's Affidavit was properly excluded because it lacked sworn medical records to support the opinions therein and failed to identify the records that Dr. Mayer reviewed in reaching his opinions.

11

To bolster its argument, Interim LSU relies on cases such as *Federal Savings & Loan Insurance Corp. v. Edwards*, 562 So.2d 1148, 1152 (La. App. 4 Cir. 1990) and *Powers v. Tucker*, 29,190 (La. App. 2 Cir. 2/26/97), 690 So.2d 922. Based upon our *de novo* review, we find Appellants' arguments to have merit.

In *Federal Savings & Loan*, a loan default case, the Federal Savings and Loan Insurance Corporation (hereinafter "FSLIC") failed to attach certified copies of business records in support of its motion for summary judgment to collect on a promissory note. 562 So.2d at 1152. This Court held that the FSLIC's failure to comply with La. C.C.P. art. 967(A)'s requirement to attach certified records made its affidavit defective. *Id*. As a result, this Court reversed the trial court's decision to grant the FSLIC's motion for summary judgment. *Id.*

In *Powers*, the Louisiana Second Circuit Court of Appeal concluded that the affidavit of the defendant's expert physician was technically deficient where the doctor based his opinion on his "professional experience and training" and where the doctor did not elaborate on that experience, other than stating that he is "a medical doctor specializing in the diagnosis and treatment of infectious diseases and is qualified to make the following statements." 29,190, p. 9, 690 So.2d at 926. Moreover, the few medical records referenced in the doctor's affidavit were not certified under La. R.S. 13:3714,[8] and the doctor's statements were found in a letter to plaintiff's counsel not an affidavit. *Id.* Referencing *Federal Savings & Loan*, the *Powers* Court determined that "such a deficiency precludes our consideration of this evidence" and reversed the trial court's grant of summary judgment in favor of defendants. *Id*.

―――――――――――――――

[8] Louisiana Revised Statute 13:3714 is titled "Charts or records of hospitals, other health care providers; admissibility of certified or attested copy; BAC scientific analysis reports."

Although Dr. Mayer did not specifically identify and attach sworn medical records, we find Dr. Mayer's Affidavit in the case *sub judice* distinguishable from the affidavits excluded from consideration in *Federal Savings & Loan* and *Powers.* In addition to detailing his expert qualifications as discussed more fully herein, representative entries from Dr. Mayer's Affidavit included the following:

> At 3:25 p.m., nurse Laws wrote "[p]atient is very restless." Breathing is labored complaining of not being able to breathe." She required 4L of nasal O2 to keep up her oxygen saturations. She was pulling at her cannulas and had to be restrained. She has a "one on one" observer ordered. No sepsis workup or repeat CT scan was ordered.

> Family members observed Ms. Downing disconnected from her oxygen for approximately 15 minutes and complained to the nursing staff that she was having difficulty breathing, but were apparently ignored.

> At 4:00 p.m., the patient was moved from the hallway into room 626 and "once in the room became nonresponsive with a pulse" (indicative of a respiratory arrest). The code blue team was called. . . .

> ***

> On 7/17, Dr. Charles Clark ordered an MRI of the brain which established anoxic brain injury. Ms. Downing remained in a comatose state until she died from respiratory failure and anoxic brain injury, on 4/20/14.

After citing these entries, Dr. Mayer detailed in his opinion as to the departure from the standard of care committed by Interim LSU and the other health care providers in the treatment of Ms. Downing as follows:

> It is my opinion to a reasonable degree of medical certainty that University Medical Center–NO, its doctors, nurses, employees, agents, departed form [sic] the standard of care in their care and treatment of Ms. Downing, as follows: by inappropriately transferring a critically injured patient out of the TICU to the floor on the morning of 7/13; by failing to timely diagnose and treat her intra-abdominal sepsis for > 12 hours; by failing to offer life-saving surgery for plaintiff-decedent's dead bowel for > 12 hours; by failing to timely respond to the patient's decompensation and respiratory distress on the afternoon of 7/13; by failing to timely intubate the patient and

13

restore adequate oxygenation before she suffered irreversible anoxic brain death.

It is my further opinion to a reasonable degree of medical certainty that the aforementioned departures were factual and proximate causes of Ms. Downing's precipitous decompensation from intraabdominal sepsis; her anoxic brain injury; comatose condition, and wrongful death.

In contrasting the medical record entries contained in Dr. Mayer's Affidavit from the unsworn records described in *Federal Savings & Loan*, we first note that in *Whitney National Bank v. Buchler*, this Court limited the scope of the holding in *Federal Savings & Loan* regarding La. C.C. P. art 967(A)'s mandate to attach sworn or certified records to supporting or opposing affidavits to those matters where the "unattached documents" had not already been made a part of the record. 615 So.2d 895, 899 (La. App. 4 Cir. 1993). In *Buchler*, this Court affirmed the trial court's grant of summary judgment in favor of the bank premised on the affidavit submitted by the bank. *Id.*, 615 So.2d at 899. The bank's affidavit detailed the debt and represented that the mortgaged property was sold subject to appraisal. *Id.*, 615 So.2d at 897. In an application for rehearing, the debtor complained that the bank failed to attach the sworn promissory notes referenced in its affidavit. *Id.*, 615 So.2d at 899. On rehearing, the Court explained that its holding in *Federal Savings & Loan* requiring that documents referenced in an affidavit "be attached thereto or served therewith" in accord with La. C.C.P. art. 967(A), was limited to those circumstances where the document does not appear in the record or where the document was never previously served on the opposing party. *Id.* In denying the application for rehearing, this Court distinguished *Buchler* from *First Savings & Loan*, noting that *Buchler's* "unsworn" documents had already been filed in the record and served. *Id.*

14

In applying the *Buchler* rationale to the present matter, the notations made in the preliminary report of Dr. Mayer's Affidavit are clearly identifiable as a part of Ms. Downing's medical records. Principally, we note that Dr. Mayer's entries are a part of medical records generated and maintained regarding Ms. Downing by Interim LSU. Moreover, Dr. Mayer's entries are also a part of attachments to the depositions of Dr. Mosier and Dr. Mooney that Appellants offered into evidence without objection in their opposition to the motion for summary judgment.[9] Hence, as per *Buchler*, La. C.C.P. art. 967's requirement for sworn records to be attached to affidavits does not apply in the instant matter to exclude Dr. Mayer's Affidavit where the medical record entries included in the Affidavit were already a part of the record, the entries came from Interim LSU's own records, and Interim LSU was well aware of their existence.

The present matter is also distinguishable from *Powers*. Here, Dr. Mayer averred that he "completed [his] review of the provided records on [Ms.] Downing['s] case and offer[ed] [his] brief standard of care report." Unlike the doctor in *Powers*, Dr. Mayer referenced detailed entries from Ms. Downing's medical records that he reviewed in formulating his opinions. Further, Dr. Mayer provided an extensive CV elaborating on his professional experience and training. Dr. Mayer also attested to all of his findings and his expertise in his Affidavit.

On a motion for summary judgment, the court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181, p. 17 (La. 2/29/00), 755 So.2d 226, 236. As argued by Appellants, the records that Dr. Mayer used to

---

[9] The trial record also shows that these same entries from Ms. Downing's medical records were referenced in the motion for summary judgment presented on behalf of a previously dismissed defendant, Dr. Rebecca Schroll.

render his opinion are clearly identifiable, constitute a part of the record, and incorporate Ms. Downing's Interim LSU hospital records. Thus, based on the precepts of *Buchler* and *Independent Fire Insurance Co.,* we conclude that Dr. Mayer's Affidavit was not deficient because of a failure to identify or attach certified medical reports. In accordance with La. C.C.P. art. 967(A), the medical record entries sufficiently established Dr. Mayer's personal knowledge, competency, and the factual predicate upon which he formulated his opinion. Accordingly, the trial court erred in excluding Dr. Mayer's Affidavit from consideration in Appellants' opposition to Interim LSU's motion for summary judgment.

Having determined that the trial court erred in excluding Dr. Mayer's Affidavit from consideration, we now review whether substantively, the Affidavit's opinions created genuine issues of material fact as to whether any breach of the standard of care by Interim LSU caused Appellants' damages so as to preclude summary judgment relief.

### B. La. C.C.P. art. 967(B) - The Affidavit's Substantive Sufficiency

Louisiana Code of Civil Procedure Article 967(B) establishes that affidavits that rest on mere allegations or denials cannot contest a properly supported motion for summary judgment. Here, Appellants assert that Dr. Mayer's Affidavit clearly established his expert qualifications and the foundation upon which he concluded that Interim LSU, including its nurses, breached the standard of care that resulted in Ms. Downing's death. By contrast, Interim LSU contends that Dr. Mayer's Affidavit regarding any breach of the standard of care by Interim LSU's nursing staff was conclusory and speculative based on a lack of expertise and factual foundation. Further, Interim LSU urges that in its totality, the Affidavit fails to

16

establish the necessary element of proximate causation between any breach by Interim LSU and Appellants' damages. Again, we find that Appellants' arguments have merit.

### 1. Nursing Standard of Care

To contest Dr. Mayer's capacity to substantively establish a breach of the standard of care on the part of the Interim LSU nursing staff, Interim LSU relies on *Migues v. Sagrera*, 620 So.2d 463, 465 (La. App. 3 Cir. 1993). Interim LSU argues that in *Migues*, the Louisiana Third Circuit Court of Appeal noted that as a qualified health care provider, that "[i]t is a nurse's duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of the nursing or health care profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his or [her] best judgment, in the application of his her or skill to the case." *Id*. Therefore, Interim LSU contends that Dr. Mayer, as a New York-based physician, lacked the requisite expertise to substantively opine on the local community standard of care applicable to its nurses. However, Interim LSU's position is refuted by established jurisprudence and Dr. Mayer's expertise as detailed in his Affidavit.

In *Beilenson v. Jefferson Parish Hospital*, 2004-814, p. 15 (La. App. 5 Cir. 12/4/04), 891 So.2d 74, 83, the Patient Compensation Fund argued that physician testimony could not be used to establish the standard or a breach of the standard of care for nurses. However, the *Beilenson* Court disagreed, noting that "there are numerous cases in Louisiana jurisprudence that have relied on physician testimony to find a breach of the standard of care by a hospital through its nurse-employees." *Id.*, 2004-814, p. 15, 891 So.2d at 82-83. Indeed, although *Migues* discussed that a nurse has a duty to exercise the requisite degree of skill employed by other

members of the nursing profession in good standing in the same community, *Migues* also recognized that "[n]urses and other health care providers are subject to the same standard as physicians." 620 So.2d at 465 (citations omitted). Moreover, the Louisiana Third Circuit Court of Appeal has noted that "only in cases where the alleged acts of negligence raise issues peculiar to the particular specialty involved is expert testimony limited to those qualified in that specialty." *Dehart v. Jones*, 2019-0789, p. 13 (La. App. 3 Cir. 12/16/20), 310 So.3d 658, 669 (citing *Pertuit v. Jefferson Parish Hospital Service District No. 2*, 2014-752, p. 6 (La. App. 5 Cir. 5/14/15), 170 So.3d 1106, 1110). Further, *Dehart* recognized that where medical disciplines overlap, it is appropriate to allow a specialist in one field to give expert testimony applicable to the standard of care in the other. *Id*. It is a specialist's knowledge of the underlying subject matter which determines the specialist's capacity to testify as to the degree of care which should be exercised. *Howard v. Vincent*, 2011-0912, p. 6 (La. App. 4 Cir. 3/28/12), 88 So.3d 1219, 1222.[10] In *Dehart*, the Louisiana Third Circuit Court of Appeal also outlined the preference of Louisiana jurisprudence to conduct an evidentiary hearing to determine an expert's qualifications before rejecting the expert's opinion through

_____

[10] *See also* La. R.S. 9:2794(A)(1), which provides, in relevant part, that:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

summary judgment proceedings in a malpractice action. 2019-0789, pp. 14-17, 310 So.3d at 669-71.

As to his expert qualifications, Dr. Mayer's Affidavit attested as follows:

3. My certifications and licenses include the following:

   a. Certified American Board of Surgery, 1979, last recertified 2020.

   b. Certified National Board of Physicians & Surgery (Surgery) 2018. New York State license #124152.

   c. Diplomate, National Board of Medical Examiners, 1975

4. I was licensed to practice medicine in the State of New York in July 2014 at the time of the alleged breaches of the standard of care and on April 20, 2015, the date of death of [Ms.] Downing.

5. I presently hold the following academic appointments:

   a. Associate Professor of Clinical Surgery New York Medical College 1995-present

   b. Instructor Hofstra Medical School Structures Course 2011-present

   c. Preceptor SUNY-Southampton Osteopathic Residency 2015-present

6. My professional experience is outlined in the attached CV and includes having served as:[11]

   a. Director of Surgery, North Shore/LIJ Syosset, NY 2005-2008

   b. Director of Surgery and Wound Care-Gurwin Jewish Center Geriatric Center 1985-2005

   c. Chief of Surgery Long Island Surgicenter, Melville, NY 2000-20057 [sic].

_____

[11] Dr. Mayer's CV was seven pages in length. It listed his extensive educational, professional, and academic experiences since 1970, along with his book and article publications and professional society memberships.

7. I am qualified on the basis of my training and experience to render an opinion as to the breach of the standard of care of physicians, nurses and medical staff practicing in hospital[s] under similar circumstances.

8. I am qualified to testify to the standard of care applicable to the defendants, that there was a breach of that standard of care, and that there is a causal connection between the breach and the claimed injury.

As in his preliminary report, Dr. Mayer reiterated the following opinion in the affidavit portion of his Affidavit regarding the departures from the standard of care in Ms. Downing's treatment and the causal connection between those departures and Appellants' death:

11. It is my opinion within a reasonable degree of medical certainty that University Medical Center-NO, its doctors, nurses, employees, agents, departed from standard of care in their treatment of [Ms.] Downing, as follows:

a. Dr. Jennifer Mooney, Dr. Willard Warren Mosier, Jr. (Resident), and the State of Louisiana **(Interim LSU Public Hospital)** by inappropriately transferring a critically injured patient out of the TICU to the floor on the morning of July 13, 2014;

b. Dr. Jennifer Mooney, Dr. Allen Bland Marr, Dr. Willard Warren Mossier (Resident) and the State of Louisiana **(Interim LSU Public Hospital/University Hospital)** by failing to timely diagnose and treat Melissa Downing's intra-abdominal sepsis for > 12 hours; by failing to obtain CT scan reimaging of Ms. Downing's abdomen for > 12 hours; by failing to offer life-saving surgery for plaintiffs' decedent for > 12 hours.;

c. **Brenda P. Laws, RN, Devin Johnson, RN[,] and staff of University Medical Center Management Corporation (Interim LSU Public Hospital/University)** by failing to timely respond to the patient's decompensation and respiratory distress on the afternoon of July 13, 2014 and by failing to timely intubate the patient and restore adequate oxygenation before she suffered irreversible brain anoxic brain death.

12. It is my further opinion to a reasonable degree of medical certainty that the aforementioned departures were factual and

20

proximate causes of Ms. Downing's precipitous decompensation from intra-abdominal sepsis; her anoxic brain injury; comatose condition, and wrongful death. (See, Exhibit B).[12]

This affidavit is based on my training and experience as a licensed medical doctor.

Thus, Dr. Mayer explicitly opines that Interim LSU nurses Laws and Johnson, and Interim LSU breached the standard of care in their treatment of Ms. Downing by "failing to timely respond to the patient's decompensation and respiratory distress on the afternoon of July 13, 2014 and by failing to timely intubate the patient and restore adequate oxygenation before she suffered irreversible brain anoxic brain death."

In opposition, Interim LSU has produced no evidence that the standard of care involving its alleged failure to provide Ms. Downing with sufficient oxygen is a peculiar standard that would not apply to the local nursing community. Moreover, Interim LSU has not requested an evidentiary hearing to challenge Dr. Mayer's expertise and his representation that he is qualified to render an opinion on the standard of care for nurses. Indeed, on the face of his CV, Dr. Mayer qualifies as an expert witness physician in accord with La. R.S. 9:2794(D)(1).[13]

_____

[12] Exhibit B is the preliminary report section of the Affidavit.

[13] Louisiana Revised Statute 9:2794(D)(1) provides the following:

D. (1) In a medical malpractice action against a physician, licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:

(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.

Therefore, we find that Dr. Mayer has established credentials to render an opinion regarding Interim LSU's medical personnel, including its nursing staff.

### 2. Causation

Interim LSU contends that Dr. Mayer's statements on causation were general and devoid of supporting facts and data. Particularly, it alleges that Dr. Mayer failed to adequately describe how any act or omissions of a particular Interim LSU employee proximately caused the death of Ms. Downing. As authority that Dr. Mayer's Affidavit improperly rested on mere conclusory allegations and did not establish any breach of the standard of care that caused Ms. Downing's death, Interim LSU cites *Kinch v. Our Lady of Lourdes Regional Medical Center*, 2015-0603 (La. App. 3 Cir. 12/9/15), 181 So.3d 900; *Baez v. Hospital Service District No. 3 of Allen Parish*, 2016-0951 (La. App. 3 Cir. 4/5/17), 216 So.3d 98; and *Simon v. Allen Oaks, LLC*, 2020-0005 (La. App. 3 Cir. 6/10/20), 298 So.3d 881.

In *Kinch*, the plaintiff brought a medical malpractice action against the emergency room physician, alleging that the physician failed to diagnose and prescribe antibiotics upon his visit to the emergency room. *Kinch*, 2015-0603, p.1,

---

(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.

(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.

(d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association.

22

181 So.3d at 901. The affidavit of plaintiff's expert on the issue of causation stated that the defendant's failure to prescribe antibiotics "certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate." *Id.*, 2015-0603, p.3, 181 So.3d at 903. The *Kinch* Court observed that "Dr. Stinson offers no objective basis for this opinion . . . , and she is unable to determine how much that failure caused an increase in Mr. Kinch's damages. Given these ambiguities, we find Dr. Stinson's expert report is insufficient to defeat summary judgment." *Id.*, 2015-0603, p. 8, 181 So.3d at 906.

*Baez* involved a medical malpractice claim arising from the decedent's death from congestive heart failure. 2016-0951, p.1, 216 So.3d at 100. On the issue of causation, the plaintiff's expert stated that "had [defendants] not deviated from the standard of care, Mr. Baez likely would have been treated for his heart failure and survived." *Id.*, 2016-0951, pp. 7-8, 216 So.3d at 104. In affirming the trial court's grant of defendants' summary judgment motion, the Louisiana Third Circuit Court of Appeal stated that "[w]hile Dr. DerSarkissian alleges that Allen Parish Hospital and Dr. Tomajian violated the standard of care in treating Mr. Baez, she never specifically relates how these violations caused Mr. Baez's death." *Id.*, 2016-0951, p. 8, 216 So.3d at 104 (emphasis added).

In *Simon*, the family of a nursing home resident brought a malpractice action against the nursing home in which the family alleged the nursing home's negligence resulted in the resident's death from bed sores, infection, and amputation. 2020-0005, p. 1, 298 So.3d at 882-83. Plaintiff's expert opined that "the facility['s] staff failed to treat Mr. Simon within the proper standard of care and that this failure was the proximate cause of Mr. Simon's injuries. *Id.*, 2020-0005, p. 4, 298 So.3d at 884. On appeal, the appellate court affirmed the trial

court's grant of summary judgment, finding that the opinion expressed by plaintiff's expert was speculative and conclusory, devoid of any underlying and supporting facts. *Id.*, 2020-0005, p. 10, 298 So.3d at 887.

Our review finds that Dr. Mayer's Affidavit differs from the defective affidavits cited in *Kinch*, *Baez*, and *Simon* on the issue of causation. In contrast to *Kinch*, *Baez*, *and Simon,* Dr. Mayer's Affidavit specified his expertise, and thereafter, provided a factual basis in support of his opinion that the breach of care by Interim LSU ultimately resulted in the wrongful death of Ms. Downing. Dr. Mayer directly related Interim LSU's breach and departure from the standard of care to an inappropriate transfer; failure to timely diagnose and treat Ms. Downing's intra-abdominal sepsis condition; and delay in offering life-saving surgery. With reference to the nurses, Dr. Mayer specifically noted their failure to timely intubate Ms. Downing and restore adequate oxygenation were departures from the standard of care. Dr. Mayer expressly found all of these breaches were proximate causes of Ms. Downing's intra-abdominal sepsis condition, anoxic brain injury, her comatose status, and resulting death.

We find that Dr. Mayer's Affidavit, which discussed the breach of care standard, specified Interim LSU's alleged departures from the standard of care, and causally related the breaches to Appellants' death, amounted to more than just conclusory allegations and unsupported speculation. Instead, the Affidavit raised fact issues of a causal connection between purported breaches of the standard of care on the part of Interim LSU and Ms. Downing's death.

Although Interim LSU was able to shift the burden of proof to Appellants based on the MRP report,[14] Dr. Mayer's Affidavit demonstrated that Appellants may be able to satisfy their evidentiary burden at trial. Hence, Dr. Mayer's Affidavit established the existence of genuine issues of material fact to defeat Interim LSU's motion for summary judgment.

## II.   The Unobjected Evidence

Appellants also urge that the motion for summary judgment should have been denied as the evidence they submitted in opposition to the motion, to which Interim LSU lodged no objections, showed Appellants could meet their burden of proof at trial. Although we have already determined that Dr. Mayer's Affidavit was sufficient to defeat the summary judgment motion, nevertheless, we elect to review this error because we find it also has merit.

Louisiana Code of Civil Procedure Article 966(D)(2) requires a court to consider any documents filed in support or in opposition to a motion for summary judgment to which no objection is raised. *See Mariakis v. North Oaks Health Sys.*, 2018-0165, p. 11 (La. App. 1 Cir. 9/21/18), 258 So.3d 88, 96 (holding that the trial court was required to consider a medical report offered into evidence without objection).

Here, Appellants iterate that Interim LSU did not object to the sworn affidavit of Andria Downing or the deposition testimonies of Dr. Willard Mossier, Dr. Jennifer Mooney, and nurses Johnson, Turner, and Laws, that were offered in opposition to the summary judgment motion. Appellants emphasize that one of their principal fault allegations against Interim LSU derived from their claim that

---

[14] We judicially note that Interim LSU did not attach any certified medical records that the MRP utilized in reaching its opinion in its summary judgment motion.

Ms. Downing was left unattended in a hallway and was disconnected from oxygen for approximately fifteen minutes, which led to anoxic brain injury resulting in her death. They assert that their unobjected evidence supported that fault allegation in the following respects:

1. The sworn affidavit of Andria Downey averred that "there was no portable oxygen tank or any other oxygen connected to her mother, while her mother, laid in the hallway for about 15 minutes waiting to be moved in the other room." [15]

2. The deposition testimony of Dr. Willard Mossier, Jr. attested that, on July 13, 2014 at 5:54 a.m., he ordered nasal cannula oxygen continuous for hypoxemia on behalf of Ms. Downing, which is low oxygen; and stated that during any move that the patient should have on her oxygen cannula.

3. The deposition testimony of Devin Johnson, RN, relayed that she understood that continuous oxygen means "that you need oxygen at all times," including during a move from one room to another.

4. The deposition testimony of Rayna Turner, RN, acknowledged that she understood the meaning of continuous oxygen as "[i]t means you place the patient on oxygen, and they're to stay on oxygen until the doctor orders you to remove it."

5. Dr. Jennifer Mooney, a party defendant and treating physician, who responded "yes" when asked in her deposition if the patient's being off of oxygen for 15 minutes could have caused the patient to code.

6. The deposition testimony of Brenda Laws, LPN, established that she did not know if oxygen was removed from Melissa Downing during her transport to another room on July 13, 2014.

A fact is material when its existence or non-existence may be essential to a plaintiff's cause of action under the plaintiff's applicable theory of recovery. *See Maddox v. Howard Hughes Corp.*, 2019-0134, p. 5 (La. App. 4 Cir. 4/17/19), 268

---

[15] Although the trial court upheld the objections to Dr. Mayer's Affidavit, in part, for its failure to attach medical records, Appellants stress that Dr. Mayer referenced Andria Downing's sworn statement that family members observed that Ms. Downing had been removed from oxygen for approximately 15 minutes; and that their observation served as a foundation for Dr. Mayer's opinion that Interim LSU failed to restore adequate oxygenation to Ms. Downing before she suffered irreversible anoxic brain death.

So.3d 333, 337. A genuine issue of material fact is one as to which reasonable persons could disagree. *Id.* Here, Ms. Downing's daughter attests that she was removed from oxygen. Interim LSU's nurses do not affirmatively contest this fact. The sworn depositions of the doctors and nurses indicate that such a removal would have been inappropriate; and Dr. Mooney suggests that the removal from the oxygen could have caused Ms. Downing to code.

At a minimum, the totality of the unobjected evidence creates a material fact issue as to whether Interim LSU breached the standard of care in its removal of Ms. Downing from oxygen and whether that removal caused her to code, resulting in her death. Therefore, notwithstanding that Dr. Mayer's Affidavit should have been admitted into evidence, the trial court also erred in finding the record was devoid of any other expert evidence to defeat Interim LSU's motion for summary judgment.

## III.    Other Assigned Errors

Our holding that the trial court erred in granting summary judgment pretermits discussion of Appellants' remaining assignments of error.

## DECREE

For the foregoing reasons, the trial court's August 18, 2021 judgment, which granted the motion for summary judgment, is reversed, and the matter is remanded for further proceedings consistent with this Opinion.

**REVERSED AND REMANDED**